**In re Gerald Todd UPTON, Robin Michelle Upton, Debtor.**

No. 06–56225.

United States Bankruptcy Court, S.D. Ohio, Eastern Division.

March 14, 2007.

the Second Amended Chapter 13 Plan (Doc. 19) filed by Gerald and Robin Upton ("Debtors"), the Objection to confirmation (Doc. 15) filed on behalf of the Chapter 13 Trustee ("Trustee"), and the Brief in Support of Confirmation (Doc. 17) filed on behalf of the Debtors. Present at the hearing were counsel for the Debtors, Donald R. Jillisky, the Chapter 13 Trustee, Frank M. Pees, and his counsel John W. Kennedy.

The Trustee objected to confirmation of the Debtors' proposed chapter 13 plan on the bases that the Debtors' plan is not proposed in good faith pursuant to 11 U.S.C. § 1325(a)(3) and does not satisfy the disposable income test pursuant to 11 U.S.C. § 1325(b) because the Debtors have failed to commit all of their excess income to the plan. More specifically, the Trustee objects to Debtors' exclusion of income received from Social Security ("SSI") for determining their projected disposable income.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and the general order of reference entered in this District. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L).

Donald R. Jillisky, Marysville, OH, for Debtors.

Frank M. Pees, Worthington, OH, Chapter 13 Trustee.

### ORDER OVERRULING, IN PART, OBJECTION TO CONFIRMATION OF PLAN FILED BY CHAPTER 13 TRUSTEE

C. KATHRYN PRESTON, Bankruptcy Judge.

This cause came on for hearing on February 8, 2007, to consider confirmation of

### FACTUAL BACKGROUND

Debtors filed a voluntary Petition for Relief under Chapter 13 of the Bankruptcy Code on October 30, 2006. In accordance with Interim Bankruptcy Rule 1007(b), the Debtors filed their statement of current monthly income as evidenced by their Official Form 22C ("Form 22"). The Debtors' household consists of five persons, and the Debtors have a household income that is above the median income for a household of the same size in the State of Ohio.[1] The

1. According to the United States Trustee Program's website, the median income for a family of the same size as the Debtors' family is $73,034.00 pursuant to the Census Bureau

Debtors' Form 22 indicates the Debtors have a current monthly income of $7,799.87, which amounts to $99,598.44 when annualized. The Debtors' Chapter 13 Plan proposes to pay unsecured creditors a dividend of 10%, and the monthly plan payments are $2,150 for the duration of the plan. According to the Trustee, the unsecured creditors in this case are entitled to receive no less than 2% pursuant to the best interest test, and the projected length of the plan as proposed by Debtors is 57 months. *See,* Trustee's Objection to Confirmation, at 4.

According to the information contained in the Schedules filed by the Debtors in this case, Robin Upton is gainfully employed and Gerald Upton is retired and receives SSI in the amount of $1,013 per month in addition to his retirement income. Calculation of the Debtors' current monthly income in Form 22 does not include any of the SSI received by Gerald Upton. After consideration of the allowable expenses and deductions, Debtors' Form 22 indicates their monthly disposable income is $168.90.

In contrast, Schedule I filed by the Debtors, which itemizes all sources of income received by them, does include the SSI and indicates their monthly combined income after payroll deductions is $7,092.74. Schedule J, which itemizes current expenditures, indicates the Debtors' monthly current expenses total $4,402.76. This results in monthly net income of $2,689.98. Debtors' proposed monthly plan payment in the amount of $2,150 is approximately $539 less than the monthly net income indicated on Schedule J.

### ARGUMENTS OF THE PARTIES

The Trustee objects to the Debtors' plan on the bases that it does not satisfy the good faith and the disposable income tests of 11 U.S.C. § 1325(a)(3) and § 1325(b) respectively.

### I. Projected Disposable Income under 11 U.S.C. § 1325(b)

The Trustee argues that the Debtors have failed to commit all of their projected disposable income reflected on their Schedule J: Schedule J indicates the Debtors have net monthly income in the amount of $2,689.98, and the monthly plan payment proposed by Debtors is only $2,150. The Trustee acknowledges and agrees that SSI is not used in the computation of "current monthly income" ("CMI") under § 101(10A). Nonetheless, the Trustee asserts that SSI can and should be considered in determining "projected disposable income." The Trustee believes a mechanical or strict application of the information contained in Form 22 can lead to absurd results because the figures in Form 22 can be artificially high or low; therefore, Form 22 should be reviewed first when analyzing a debtor's circumstances, and if there are changed or special or unique circumstances with respect to the debtor's income and expenses, then Schedules I and J should be considered to determine "projected disposable income."

In contrast, the Debtors argue that the statutory language of 11 U.S.C. § 1325(b) mandates a strict application of Form 22 in determining "projected disposable income" for above-median income debtors. More specifically, Debtors argue that the net monthly income evidenced on Debtors' Schedule J should not be used in analyzing whether the Debtors have committed all of

statistics for Median Family Income by Family Size applicable to cases filed between October 1, 2006 and January 31, 2007.

their projected disposable income because it includes SSI that is otherwise not included in the calculation of CMI and "disposable income." Debtors essentially argue that SSI cannot be considered in determining "projected disposable income" because SSI can never be considered part of "disposable income."

## II. Good Faith under 11 U.S.C. § 1325(a)(3)

The Trustee argues, in addition and in the alternative, that Debtors' plan has not been proposed in good faith because they propose to commit only a portion of the SSI and not substantially all of it to pay their creditors. Debtors argue that as a matter of law their plan is proposed in good faith by their compliance with the policy decision made by Congress that SSI is not available to pay unsecured creditors.

## LEGAL ANALYSIS

### I. 11 U.S.C. § 1325(b): PROJECTED DISPOSABLE INCOME

11 U.S.C. § 1325(b) provides in pertinent part as follows:

(b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

(A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

(B) the plan provides that all of the debtor's *projected disposable income* to be received in the applicable commitment period beginning on the date that the first payment is due under

the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1)(B)(emphasis added). The amendments enacted by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") changed the definition of "disposable income" for cases filed on or after October 17, 2005.[2] "Disposable income" is now defined in pertinent part as:

[C]urrent monthly income received by the debtor (other than child support payment, foster care payments, or disability payments for a dependent child made in accordance with applicable non-bankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended—

(A)(I) for the maintenance or support of the debtor or a dependent of the debtor . . . [.]

11 U.S.C. § 1325(b)(2). The term "disposable income" specifically incorporates the term "current monthly income" which is also defined in the Bankruptcy Code as amended by BAPCPA. Current monthly income ("CMI") is defined, in part, as:

the average monthly income from all sources that the debtor receives . . . without regard to whether such income is taxable income, derived during the 6-month period [prior to the bankruptcy case being filed] and includes any amount paid by any entity other than the debtor . . . on a regular basis for the household expenses of the debtor or the debtor's dependents . . . but excludes benefits received under the Social Security Act. . . .

---

**2.** Prior to the BAPCPA amendments, § 1325(b)(2) defined "disposable income" as "income which is received by the debtor and which is not reasonably necessary to be ex-

pended for the maintenance or support of the debtor or a dependent of the debtor. . . ." 11 U.S.C. § 1325(b)(2) (2005).

11 U.S.C. § 101(10A). Once a debtor's CMI has been determined, the next step in determining disposable income is to reduce the CMI by the amount of the family's reasonably necessary expenses. What constitutes reasonable and necessary expenses differs depending upon whether the debtor is above or below the median income for a household of the same size. *See* 11 U.S.C. § 1325(b)(3).

If a debtor's current monthly income is below the median income for a household of the same size, the reasonable and necessary expenses are determined by what is listed on Schedule J. If, however, a debtor has current monthly income that is greater than the median income for a household of the same size in the state in which the debtor resides, § 1325(b)(3) dictates that the debtor's reasonably necessary expenses are calculated pursuant to Section 707(b)(2) (which has generally become known as the "means test"). Section 707(b)(2)(A)(ii)(I) provides in pertinent part as follows:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides....

Simply stated, the reasonable and necessary expenses used in determining an above-median income debtor's disposable income is a combination of figures for certain categories, such as food, clothing, etc., issued by the Internal Revenue Service for

the area in which the debtor resides and the debtor's actual expenses for certain other items, such as taxes, health care, child care, etc.[3]

In the instant case, while the Debtors' Form 22 reflects monthly disposable income of $168.90, the Debtors' Schedule J shows a net monthly income of $2,689.98 due in part to inclusion of the Debtors' SSI. The question is whether the Court should resort to Form 22 or Schedule J in determining "projected disposable income." The Debtors insist that the Court is limited to analysis of Form 22 when determining "disposable income," and thus "projected disposable income." Either alternative is problematic.

This Court agrees with the Trustee that reference to Schedules I and J is the appropriate method for analyzing and computing "projected disposable income" under 11 U.S.C. § 1325(b)(1)(B). However, it is limited by the directive that certain income is specifically excluded from the calculation of "current monthly income." 11 U.S.C. § 101(10A).

Form 22 evidences a debtor's current monthly income, the calculation of the applicable commitment period, and the amount of the debtor's disposable income.[4] The calculation of disposable income provided in Form 22 is based upon debtor's historical income (i.e., income received six months prior to filing bankruptcy). Furthermore, the expenses for an above-median income debtor are partly based upon figures issued by the Internal Revenue Service and very well may not reflect a debtor's actual circumstances. The fact

---

**3.** Section 707(b) includes additional conditions that may affect a debtor's allowable expenses, however, none of those conditions are at issue in this case.

**4.** Applicable commitment period, which is not at issue in this case, is the length of time a

debtor is required to pay the Trustee funds for distribution through a chapter 13 plan: thirty-six months for a below-median income debtor and sixty months for an above-median income debtor.

that the information contained in Form 22 is not always an accurate reflection of a debtor's current circumstances can lead to anomalous, or even absurd results if it is the only information used in determining a debtor's "projected disposable income." The *Fuller* court noted some of these difficulties in determining whether to use the income figure stated in Form 22 or Schedule I:

> If the purpose of the § 1325(b)(1)(B) requirement that a debtor commit all of her 'projected disposable income' to a plan is to make sure that the debtor is paying as much as possible each month over the life of the plan to the people to whom she is indebted, ... it makes little sense to freeze the calculation of the debtor's income at a particular—possibly arbitrary—point in time and set that number in stone. It makes even less sense that the point in time at which the calculation is frozen is the time *before* the debtor even began making payments on the plan. Rather, it appears logical that on the day the debtor proposes a plan for repaying her creditors—theoretically, the date she files the petition for relief—the debtor's actual income as of that date should provide an appropriate starting point for determining how much she can commit to the plan.
>
> The amount of income on [Form 22] is not—for either below-median or above-median debtors—necessarily the debtor's income at the moment she proposes her plan. It can be—if the debtor made exactly $2,500 per month for the six months before the month she filed, and makes $2,500 per month on the date she files, the income number on her [Form 22] and the income number on her Schedule I will be the same. If, on the other hand, she loses her job a month before filing, the income on her [Form 22] will be much higher than her income at the time of filing, giving a false im-

pression that she has more income available to devote to the plan than she actually does. The opposite is true for the debtor who obtains a lucrative job a month before filing—his income on [Form 22] will be much lower, giving the impression that he has less to contribute to the plan [than] he actually does.

*In re Fuller,* 346 B.R. 472, 483 (Bankr. S.D.Ill.2006).

Similar difficulties can arise when analyzing a debtor's expenses when the debtor is above-median income. The expenses reflected in Form 22 for a debtor that has above-median income may not accurately reflect the debtor's actual expenses because the expenses for an above-median income debtor are determined by the means test built into Form 22. The means test applies expense amounts for certain categories based upon figures issued by the Internal Revenue Service and are not based on the actual needs of the debtor. Arguably, a debtor's actual expenses as listed on Schedule J can possibly be greater than or less than those expenses allowed by the means test. Similarly, a debtor's financial picture may be materially affected by the goals they seek to achieve through the relief provided by the Bankruptcy Code. For example, in calculation of disposable income, Form 22 provides for insertion by a debtor of contractual payments on secured debt, regardless of the debtor's intention with respect to the encumbered asset, whereas a chapter 13 debtor would not include on Schedule J such an obligation if the debtor intends to surrender the asset, or propose modification of the obligation to the secured creditor in a chapter 13 plan. In the case where the debtor's actual expenses are less than those allowed under the Form 22 means test, her Schedule J may reflect that she has additional income available to pay into the plan that Form 22 does not;

thus, reliance on Form 22 for determination of the debtor's payments under those circumstances would create a windfall for the debtor at the expense of unsecured creditors. On the other hand, if the expenses as indicated on Form 22 are less than the debtor's actual expenses, the debtor may be precluded from proposing a feasible plan if Form 22 is the only information relied upon in determining "projected disposable income." Neither of these results are consistent with the underlying policies that a debtor seeking chapter 13 relief under the Bankruptcy Code pay all that she can afford to her creditors and that the honest debtor be afforded a "fresh start." Clearly, strict application of and sole reliance upon the information in Form 22 in analyzing how much "projected disposable income" must be committed to a plan can be inconsistent with the Code.

■ Furthermore, the statutory language of 11 U.S.C. § 1325(b)(1) mandates the use of Schedules I and J in determining "projected disposable income." Section 1325(b)(1) clearly indicates that the Court is supposed to make a determination of "projected disposable income" as of the effective date of the plan. 11 U.S.C. § 1325(b)(1) states in pertinent part as follows:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court

may not approve the plan unless, *as of the effective date of the plan—*

> . . .

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

11 U.S.C. § 1325(b)(1) (emphasis added). The language "as of the effective date of the plan" specifically directs the timing of the court's inquiry. Form 22, as discussed earlier, contains historical data and reflects circumstances that occurred prior to the date of filing. Schedules I and J, however, reflect the debtor's circumstances as of the petition date with accommodation for the terms of the debtor's proposed plan. If a debtor has any change in income or expenses prior to confirmation, she is under a duty to amend her Schedules I and J accordingly. Thus, Schedules I and J as filed on the petition date, subject to any amendments thereafter, reflect the debtor's circumstances as of the effective date of the plan. Therefore, the Trustee may consider Schedules I and J in determining "projected disposable income" under 11 U.S.C. § 1325(b)(1)(B).[5]

■ The Debtors, however, are also correct in asserting that the SSI as listed on their Schedule I should not be considered in determining whether a debtor has

---

5. The Debtors emphasize that they have not experienced a change in circumstances that warrants resorting to Schedule J for determination of projected disposable income, and again insist that the Court look only to Form 22. However, the statute does not limit its application of "projected disposable income" in situations involving a change in the debtor's circumstances, but requires the Court's determination and application of that in every chapter 13 case. The Court's holding does

not render Form 22 meaningless, as it is still used to determine current monthly income and applicable commitment period. If the Court held otherwise, however, Schedules I and J would be rendered meaningless in cases involving above-median income debtors, as those Schedules would have no purpose. This would be inconsistent with the mandate of Section 521 that the debtors file schedules of current income and current expenses.

contributed all of her "projected disposable income" to fund the plan pursuant to 11 U.S.C. § 1325(b)(1)(B).[6] As discussed earlier, "current monthly income," as defined by the Code, specifically excludes any benefits received under the Social Security Act from its computation. *See* 11 U.S.C. § 101(10A). "[S]ocial security income is not required to be included in the analysis of whether [the debtor] is contributing all of her 'projected disposable income' to her plan under § 1325(b)(1)(B)." *In re Ward,* 359 B.R. 741, 744–46 (Bankr.W.D.Mo. 2007); *see also In re Schanuth,* 342 B.R. 601, 605 (Bankr.W.D.Mo.2006) ("In light of 11 U.S.C. § 101(10A)'s explicit exclusion of social security benefits from the calculation of CMI, ... the Court cannot compel the Debtors to include those benefits in their calculation of disposable income."). This Court agrees that consideration of benefits received under the Social Security Act is inappropriate for determining "projected disposable income." Therefore, in this case, Debtors' monthly SSI in the amount of $1,013 shall not be included in determining whether they are contributing all of their "projected disposable income" under § 1325(b)(1)(B). While this "hybrid" approach to analysis of the Debtors' disposable income is a bit cumbersome, it presents the only conclusion this Court can derive given the language of the statute, the practicalities of its application, and the intent behind Chapter 13 of the Bankruptcy Code.

Satisfying the disposable income test required by 11 U.S.C. § 1325(b), however, does not end the Court's inquiry in considering confirmation of a plan. Debtors are still required to propose a plan in good faith pursuant to 11 U.S.C. § 1325(a)(3).

## II. 11 U.S.C. § 1325(a)(3): GOOD FAITH

■■■ The amendments wrought by BAPCPA did not change the requirement that a chapter 13 plan be proposed in good faith. *See* 11 U.S.C. § 1325(a)(3). In the Sixth Circuit, one factor to consider in determining good faith is the amount of the proposed payments and the amount of the debtor's surplus. *In re Caldwell,* 895 F.2d 1123, 1126–27 (6th Cir.1990) (citing *In re Okoreeh–Baah,* 836 F.2d 1030, 1032 (6th Cir.1988)). The good faith test enunciated by the *Caldwell* court consists of twelve factors:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increase in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

---

**6.** Excluding SSI from this analysis, however, does not necessarily preclude its consideration in determining whether a plan is feasible pursuant to 11 U.S.C. § 1325(a)(6). Thus, if a debtor's Schedules I and J indicate the net monthly income after excluding any SSI is less than the proposed plan payment, the SSI may still be considered by the Court under 11 U.S.C. § 1325(a)(6) to overcome the appearance that the plan is not feasible.

(9) the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;

(10) the motivation and sincerity of the debtor in seeking Chapter 13 relief;

(11) the burden which the plan's administration would place upon the trustee; and,

(12) whether the debtor is attempting to abuse the spirit of the Bankruptcy Code.

*Caldwell,* 895 F.2d at 1126–27.

The bankruptcy court must ultimately determine whether the debtor's plan, given his or her individual circumstances, satisfies the purposes undergirding Chapter 13: a sincerely-intended repayment of pre-petition debt consistent with the debtor's available resources. The decision should be left simply to the bankruptcy court's common sense and judgment.

*Ed Schory & Sons, Inc. v. Francis (In re Francis),* 273 B.R. 87, 92 (6th Cir. BAP 2002) (quoting *In re Okoreeh–Baah,* 836 F.2d 1030, 1033 (6th Cir.1988)).

■ Some courts have opined that the express exclusion of social security income eliminates the elements of debtor's income and surplus from the good faith analysis. As have many other courts, the Sixth Circuit Court of Appeals has specified the debtor's income and surplus as factors for consideration in the determination of good faith. Congress, armed with the knowledge of that interpretation, did not amend the requirement of good faith contained in § 1325, or the elements to be considered in that analysis.[7] Congress is presumed to know the case law interpreting a statute, and if no amendment to the statute is crafted, then Congress is presumed to be satisfied with the effect of the statute as applied by the courts. *Cf. Midlantic Nat'l Bank v. New Jersey Dep't of Environmental Protection,* 474 U.S. 494, 501, 106 S.Ct. 755, 759, 88 L.Ed.2d 859, 866 (1986) ("The normal rule of statutory construction is that if Congress intends for legislation to change the interpretation of a judicially created concept, it makes that intent specific."). Furthermore, "Congress ... indicated a clear intent to curb opportunistic filings and its displeasure with the practice of allowing debtors, who are able to repay their debts, to avoid their obligations to creditors." *In re Edmunds,* 350 B.R. 636, 649 (Bankr.D.S.C.2006) (citing H.R.Rep. No. 109–31(1), at 5 (2005), U.S.Code Cong. & Admin.News 2005, pp. 88, 91–92).

■ According to Schedule J, the Debtors in this case have net monthly income in the amount of $2,689.98, and their monthly chapter 13 plan payment is only $2,150. As a result, the Debtors have approximately $539 of monthly net income that is not being committed to the plan, which will allow the Debtors to accumulate approximately $32,340 in savings, or surplus, over the life of the plan. This fact weighs heavily against a finding that the Debtors' plan is proposed in good faith pursuant to 11 U.S.C. § 1325(a)(3). As observed by the court in *In re LaSota,* 351 B.R. 56 (Bankr.W.D.N.Y.2006), neither the projected disposable income test, nor § 1325(a)(3)'s good faith requirement, either independently or in combination, permit debtors to accumulate savings while paying unsecured creditors less than 100%. Unless the Debtors can show justification

---

**7.** However, the Court acknowledges that there may be more to the determination of good faith in light of Congress' exclusion of certain income from the term "disposable income." For instance, for those debtors suffering disabilities or progressive illness, will they require increased medical attention, surgery or medication in the future for which they need to reserve funds? Will maintaining a home that can accommodate their needs require additional expenditures in the future?

for reserving such an amount, the Court would find it difficult to approve the Debtors' plan as proposed.

The Debtors did not present any evidence regarding good faith at the hearing, but instead intimated that good faith could be determined as a matter of law. This Court disagrees and will defer its ruling on the Trustee's objection to confirmation based on his assertion that the Debtors' plan has not been proposed in good faith to allow the Debtors an opportunity to present evidence regarding that issue.

## CONCLUSION

For the foregoing reasons, the Trustee's objection to confirmation for Debtors' failure to commit all their projected disposable income is hereby **OVERRULED.** The Court defers ruling on the Trustee's objection to confirmation based on good faith to allow Debtors the opportunity to either amend their chapter 13 plan or present evidence on the good faith criteria, whichever they deem appropriate. Accordingly, the Court's ruling on confirmation of the Debtors' plan is also reserved until the good faith issue is resolved. A hearing to consider confirmation shall be held on April 5, 2007, at 2:00 p.m. in Courtroom C, Fifth Floor, United States Bankruptcy Court, 170 N. High Street, Columbus, Ohio 43215.

**IT IS SO ORDERED.**