**In re Darrell Dwayne SHELTON, Debtor.**

**No. 06–68375–MHM.**

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

June 11, 2007.

Alex J. Dolhancyk, The Dolhancyk Law Firm, P.C., Jonesboro, for Debtors.

Sameer Kapoor, Office of Adam M. Goodman, Chapter 13 Trustee, Atlanta, for Chapter 13 Trustee.

## ORDER DENYING CONFIRMATION

MARGARET H. MURPHY,
Bankruptcy Judge.

Debtor has proposed a plan that contributes substantially more to his retirement account than to his unsecured creditors. The proposed plan raises two issues: first, whether the plan complies with § 1325(b)(1)'s requirement that Debtor applies all of his projected disposable income to the plan, and second, whether the plan is proposed "in good faith." The Chapter 13 Trustee ("Trustee") has objected to confirmation on both grounds.

### Facts

The proposed plan specifies that Debtor will pay $550 a month for the applicable commitment period of 60 months.[1] In his plan, Debtor estimated that general unsecured claims total $76,491,[2] and proposed no dividend payment (zero % dividend) to these creditors. On line 55 of form B22C, Debtor lists a retirement contribution of $655 per month.[3] The disposable income available for distribution to unsecured creditors will increase by the amount Debtor reduces his retirement contribution.

Whether the retirement fund existed before Debtor filed his petition or was implemented in anticipation of filing a bankruptcy petition is unclear. Trustee states that Debtor has "not changed his pre-petition behavior and is still contributing 11.5% a month of his gross income to a retirement account." Debtor also owes obligations on a loan from his retirement account that he proposes to pay with funds which will, in effect, divert payments from general unsecured creditors.[4] Despite the clear implication of past retirement savings and a loan thereon, Schedules B and C claim no "Retirement/401k" asset. Additionally, pay advices filed by Debtor as required by 11 U.S.C. § 521(a)(1)(B)(iv) (for 60 days prepetition) show no retirement contributions.

---

1. Debtor's annual income figure is above Georgia's median annual income, thus requiring a 5–year plan. 11 U.S.C. § 1325(b)(4)(A)(ii).

2. Unsecured claims separately classified—*i.e.* treated in classes apart from general unsecured claims, are not included in this total. The Plan specifies an additional $10,144 co-debt to be paid in full directly by Debtor (not through the Plan) because a non-filing co-maker is also liable on the claim. This amount, however, remains $2,602 short of the total scheduled unsecured claims. Whatever the correct amount, Debtor proposes to pay no dividend to the general unsecured claims not separately classified.

3. Debtor amended line 55 to reflect an additional $100 per month to repay a retirement account loan. This amount is excluded from disposable income by 11 U.S.C. § 1322(f). Thus, the total on line 55 is $755.

4. *See supra*, note 3.

Trustee objects to confirmation on two grounds: first, Debtor's plan fails to commit all of his disposable income to the plan during the term required by 11 U.S.C. § 1325(b), and second, a plan that pays no dividend (a so-called "0% plan") to general unsecured creditors, but does pay roughly ten percent (10%) of gross income ($655) per month to his retirement plan, is not a plan "proposed in good faith." 11 U.S.C. § 1325(a)(3).

## Disposable Income

■ Creditors of a debtor look primarily to two sources to receive payment: property of the estate and Debtor's disposable income. The two sources are distinct. Classes of property that are excluded from becoming property of the estate under § 541(b) may still be a source of disposable income under 11 U.S.C. § 1325(b)(2). *See In re Myles*, 2006 Bankr.LEXIS 863 (Bankr.D.Ga.2006) (J. Murphy); *cf. Taylor v. U.S.*, 212 F.3d 395, 397 (8th Cir. 2000).

If a party objects to a Chapter 13 plan, a debtor must demonstrate that "all of the debtor's projected disposable income...will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1). *Disposable in-come* is defined in the next subparagraph as **current monthly income** less "amounts reasonably necessary to be expended" for the maintenance or support of the debtor and her dependents. 11 U.S.C. § 1325(b)(2).[5] If a debtor's income is higher than the median income in the state, as is Debtor's in the instant case, the Chapter 7 "means test" determines, based primarily on IRS guidelines for settlements, such deductions as are reasonable in nature and amount. 11 U.S.C. § 1325(b)(3).

In addition to the § 1325(b)(2)-defined deductions, some other sources of income are not counted in the final disposable income calculation. Like property of the estate, "disposable income" *excludes—i.e.*, is never included in the income calculation—some sources of income, and *exempts* others—*i.e.* included initially, but later subtracted.

■ Prior to the enactment of BAPCPA,[6] retirement contributions were neither excluded nor exempted from disposable income. *See Taylor v. U.S.*, 212 F.3d 395, 396 (8th Cir.2000). BAPCPA amended the Code and removed qualified withholding contributions from both the definition of property of the estate and from the calcu-

---

**5.** While "projected disposable income" may be at times different from "disposable income," that distinction is immaterial here. Section 1325(b)(2) sets out the formula used in order to calculate "disposable income." It is that formula which is used on Form B22. However, neither Form B22 nor § 1325(b)(2) define *projected disposable income*—the minimum amount Debtor must dedicate to the plan. 11 U.S.C. § 1325(b)(1). A number of courts have found it appropriate to deviate from a disposable income figure arrived at through Form B22 when Debtor's income is expected to change in the future. *See In re Edmunds*, 350 B.R. 636, 643–44 (Bankr. D.S.C.2006); *In re Grady*, 343 B.R. 747, 752 (Bankr.D.Ga.2006) (J. Mullins). These courts focus on the mandate of § 1325(b)(1)(B) that "all of Debtor's *projected* disposable income"

(emphasis added) be paid into the plan. If, however, the inputs to the "disposable income" formula are identical to the inputs for "projected disposable income," the amount arrived at in B22 will be the same. In this case neither party suggests that past amounts will be different from projected amounts, meaning no distinction exists between "disposable income" and "projected disposable income" in this case.

**6.** BAPCPA refers to the Bankruptcy Abuse and Consumer Protection Act of 2005, Public Law 109–8, which was signed into law April 20, 2005. The effective date for most of its provisions is 180 days after enactment, which was October 17, 2005.

lation of disposable income. 11 U.S.C. § 541(b)(7). BAPCPA amended 11 U.S.C. § 541(b)(7) to direct that "[qualified retirement contributions] shall not constitute disposable income, as defined in § 1325(b)(2)."

Trustee argues that § 1325(b)(1) is unaffected by § 541(b)(7)'s exclusion because § 541(b)(7) refers only to § 1325(b)(2) (and does so twice, in parallel subsections A and B to 541(b)(7)). However, § 1325(b)(2) defines disposable income "[f]or purposes of this subsection." That subsection must include § 1325(b)(1) (specifically (b)(1)(B)), for at least two reasons. First, BAPCPA's amendments to § 541(b)(7) would be superfluous if changes to § 1325(b)(2) were not reflected by § 1325(b)(1). Section 541(b)(7) singles out § 1325(b)(2) because the second subsection of subsection (b) defines "disposable income" and also, perhaps, because Congress intended the exclusion to apply only to the term "disposable income" as it is used in § 1325(b). *See, e.g.,* 11 U.S.C. §§ 1225(b)(2), 1229(d)(2), 1322(a)(4). Second, § 1325(b)(4)'s reference to the definition of "applicable commitment period" clearly refers back to § 1325(b)(1)(B) rather than to § 1325(b)(4) only. While these amendments to BAPCPA are not a model of drafting clarity, perhaps Congress desired to avoid changing other *sections* rather than changing another *subsection;* if so, Trustee's misinterpretation is understandable.

That a reference to retirement contributions is not also found in § 1325(b)(2) itself is understandable, again, for two reasons: first, § 541(b)(7) obviates the need to deduct retirement contributions; § 541(b)(7) excludes them, so deducting them would be redundant. *In re Devilliers,* 358 B.R. 849, 2007 Bankr.LEXIS 75 (Bankr.D.La. 2007) ("contributions are not a deduction because they were never included in the first instance."); *In re Quarterman,* 342 B.R. 647, 651 (Bankr.D.Fla.2006). Second, § 1325(b)(2) sets up three *deductions* in addition to three parenthetically referenced, specific child-related payment *exclusions,* five of which appear to be implementations of policy (the sixth, the last exclusion is a practical legal consideration).

Trustee also argues that in order to exclude retirement account contributions from disposable income, the contributions must be shown "reasonably necessary" to a debtor; however, retirement contributions are not deducted under § 1325(b)(2) where the "reasonably necessary" language is located. Instead, retirement contributions are excluded from the definition of *property of the estate* in § 541(b)(7), which contains no such "reasonably necessary" qualification. Section 1325(b)(2) *subtracts* or *deducts* (the Code uses the term "less") amounts for three categories of items "reasonably necessary to be expended" from the items included in debtor's current monthly income. Retirement account contributions in § 541(b)(7) are not *subtracted* from current monthly income because they are exempted or excluded from the calculation; they simply "do not constitute disposable income" under § 1325(b) in the first place. 11 U.S.C. § 541(b)(7).

"[W]hen the statute's language is plain, 'the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'" *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.,* 530 U.S. 1, 6, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000) (quoting *United States v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (quoting *Caminetti v. United States,* 242 U.S. 470, 37 S.Ct. 192, 61 L.Ed. 442 (1917))). The exclusion by Congress of retirement contributions from a debtor's estate property precludes it from being considered

disposable income; therefore, Congressional intent on this point is sufficiently plain and is a matter of policy; as such, it does not lead to an absurd result. The goal to expand retirement savings is clear and the result is reasonable. Accordingly, amounts withheld from wages for contribution to a qualified retirement plan are not included in § 1325(b)(1)'s calculation of projected disposable income.

## Good Faith

■ Trustee also objects to the proposed plan on the ground that it violates the obligation that the plan be proposed in good faith. 11 U.S.C. § 1325(a)(3). The existence or absence of good faith is determined in light of the totality of the circumstances. *See In re Kitchens*, 702 F.2d 885, 888 (11th Cir.1983). *Kitchens* considered 11 factors,[7] including a debtor's income from all sources; the living expenses of a debtor and her dependents; the amount of debtor's (bankruptcy) attorney's fees; the probable or expected duration of a debtor's chapter 13 plan; the motivations of a debtor and her sincerity in seeking relief under the provisions of chapter 13; special circumstances such as inordinate medical expense; and others. *Kitchens*, 702 F.2d at 888–89.

As Congress has amended the Code since 1983, the effect has been to remove specific "good faith" issues from the courts' discretion. *Cf. In re Barr*, 341 B.R. 181, 185 (Bankr.D.N.C.2006). *Kitchens'* all-inclusive factors were necessary when

the Code did not give the courts more specific guidelines with which to determine the adequacy of a debtor's plan. As the Code has been amended, explicit provisions have overridden the generalized *Kitchens* factors. *See Keach v. Boyajian*, 243 B.R. 851, 867–68 (1st Cir. BAP 2000); *In re Johnson*, 346 B.R. 256, 263 (Bankr. S.D.Ga.2006). For instance, the 1984 amendments to the Code created a formula to determine the amount of disposable income a debtor must dedicate to the plan. 11 U.S.C. § 1325. Previously courts determined the matter as one of good faith under § 1325(a)(3); *see Keach*, 243 B.R. at 861.[8]

BAPCPA continued the trend of narrowing the scope of the courts' good faith inquiries. The amendments clarified the disposable income calculation and attempted to create a bright-line test so that each debtor's disposable income could be calculated with precision. *See* 11 U.S.C. § 1325(b)(2). The amendments also removed certain classes of income from "property of the estate," which effectively precluded their inclusion in disposable income. *See* § 541(b)(7). Debtor argues that Congress intended to go one step further. He proposes that Congressional intent, as evidenced in § 541(b)(7), was to completely remove retirement plans from the reach of creditors. Debtor cites *In re Johnson* in support of the argument that compliance with the first prong of *Kitchens*—the amount of a debtor's income from all sources—should be presumed if the requirements of § 1325(b) are met. *In re*

---

7. The precise number varies depending on the court, but it hovers around a dozen factors; many overlap. The factors are derivatives of the Eight Circuit's factors, first defined in *In re Estus*, 695 F.2d 311, 317 (8th Cir.1982).

8. Many of the other prongs have been defined explicitly by Congress. *See, e.g.*, 11 U.S.C. § 1325(b)(2) ("less amounts reasonably necessary to be expended...for the maintenance or

support of Debtor or a dependent of Debtor"); 11 U.S.C. § 1325(b)(4)(A) (defining applicable commitment period); 11 U.S.C. § 1325(a)(7) (good faith in filing a petition); 11 U.S.C. §§ 328(b), 329(b) (reasonable attorney's fees); 11 U.S.C. § 707(b)(2)(B)(i) ("the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition....").

*Johnson,* 346 B.R. at 263; *see, e.g., In re Alexander,* 344 B.R. 742, 752 (Bankr. D.N.C.2006); *In re Farrar–Johnson,* 353 B.R. 224, 232 (Bankr.D.Ill.2006); *In re Barr,* 341 B.R. at 186; *In re Guzman,* 345 B.R. 640 (Bankr.E.D.Wis.2006).

■ While it is apparent that Congress removed certain streams of income from being considered disposable income by exemption or deduction, it does not necessarily follow that Congress intended to handicap the courts' good faith inquiries or unintentionally create a proverbial "loophole." Unlike previous amendments that have eclipsed particular *Kitchens'* factors, BAPCPA expressly limited the application of § 541(b)(7) to one particular paragraph, § 1325(b)(2). Section 1325(b)(2) is also limited to a specific application: "[f]or purposes of this subsection." Had Congress sought to soften the good faith requirement, a statement to that effect is conspicuously absent. While it is true that Congress provided more protection for retirement accounts, a primary focus of BAPCPA is to enable the courts to ferret out abuses of the law. *See* 11 U.S.C. § 1325(a)(7).

■ Compliance with § 1325(b), while necessary to confirm a plan, is not alone sufficient to confirm it. *See In re Devilliers,* 358 B.R. 849, 2007 Bankr.LEXIS 75, *45–46 ("strict and technical compliance with the means test does not necessarily satisfy any debtors' burden of good faith."). Once § 1325(b) is satisfied, the debtor must also comply with the good faith requirement in § 1325(a)(3). Good faith has no role in assessing whether the *amount* of income paid into the plan is sufficient, one of the *Kitchens* prongs, but good faith and the remaining *Kitchens* factors remain relevant to confirmability of a plan.

■ BAPCPA does not direct a court to abandon viewing the totality of the circumstances, nor impose a requirement that a court blind itself to the full picture of a debtor's finances. Before the passage of BAPCPA, Congress had amended the Code to remove certain other factors from the scope of § 1325(a)(3) without discrediting the totality-of-the-circumstances approach. In adapting the *Estus* factors to the 1984 amendments, the Eighth Circuit Court of Appeals reaffirmed the totality-of-the-circumstances approach. *Education Assistance Corp. v. Zellner,* 827 F.2d 1222 (8th Cir.1987) (as stated in *In re LeMaire,* 898 F.2d 1346, 1349 (8th Cir. 1990)); *see also In re McGovern,* 297 B.R. 650, 657 (D.Fla.2003). Our circuit has also continued to assess the totality of the circumstances. *In re Saylors,* 869 F.2d 1434 (11th Cir.1989). Likewise, under BAPCPA, the totality-of-the-circumstances approach appears to remain a relevant inquiry.

■ *Kitchens* directs a Court to consider not only the honesty of a debtor, but also a debtor's motivation in proposing her plan. A bankruptcy court cannot simply decide that the payout to creditors is too small and refuse to confirm the plan. *See In re Kitchens,* 702 F.2d at 889. Good faith does not require that a debtor contribute all of her retirement contributions to her plan when the Code does not mandate that result. *See Solomon v. Cosby,* 67 F.3d 1128, 1133 (4th Cir.1995). However, § 1325(a)(3) would be superfluous if good faith required merely technical compliance with the Code. *In re Devilliers,* 2007 Bankr.LEXIS 75. Instead, § 1325(a)(3) requires that the plan adhere to the law *and* be proposed in good faith. 11 U.S.C. § 1325(a)(3). Central to good faith is an attempt not only to pay creditors, but to do so "consistent with a debtor's available resources." *In re Okoreeh–Baah,* 836

F.2d 1030, 1033 (6th Cir.1988). Even if disposable income is not considered, the degree of effort a debtor will expend in completing the plan remains a factor in determining good faith. *Kitchens,* 702 F.2d at 888–89.

The easiest way to violate § 1325(a)(3) is to misrepresent, lie, or otherwise mislead the court. *See In re LeMaire,* 898 F.2d at 1352. A lack of good faith does not necessarily require malice or an intent to deceive. *In re McGovern,* 297 B.R. at 660. Compliance with the law and honesty are necessary for good faith but are not alone sufficient. While a zero dividend plan, such as in the instant case, is not *per se* bad faith, the amount of the payment to creditors in relation to a debtor's ability to pay is a relevant factor in determining good faith. *In re Petersen,* 228 B.R. 19, 26–27 (Bankr.D.Fla.1998). A court is under no compulsion to shield its eyes from the record in assessing good faith. Exempted and excluded assets and income may be relevant to determining whether chapter 13 is being used for equitable purposes. *Cf. In re Campbell,* 124 B.R. 462, 464–65 (Bankr.D.Pa.1991).

The twin aims of bankruptcy are to provide equitable distribution of assets for creditors, and to provide a fresh start for a debtor. *Burlingham v. Crouse,* 228 U.S. 459, 472–73, 33 S.Ct. 564, 57 L.Ed. 920 (1913). The Code and state law mandate payment of certain domestic support obligations. Section 1322(f) exempts amounts spent to repay § 362(b) 19 loans (qualified retirement account loans) from disposable income "under § 1325," and prohibits materially altering the terms of any such loan. Amounts that a debtor must pay, either by statute or out of necessity, would rarely be cited as evidence of a debtor's lack of good faith. As the court in *In re Devilliers* stated, "it should be the rare debtor whose proposed plan is technically in compliance with § 1325(b) but cannot meet the burden of good faith." Congress, by means of various Code provisions, trusts the courts with discretion in enforcing § 1325(b)(2) and § 1325(a)(3). *See also Kitchens,* 702 F.2d at 885.

In this case, Debtor proposes a zero percent dividend (or 0% payout) to unsecured nonpriority creditors, a payment to secured creditors of $550 a month, and a contribution of $655 a month to his retirement plan. The proposed plan would permit Debtor, over the course of the plan, to shelter $39,300 in his retirement account, pay approximately $33,000 to secured creditors or lose the assets representing collateral, pay nothing to unsecured creditors, and discharge $89,237 in, primarily, credit card debt.[9]

Such a grossly disproportionate plan invites scrutiny. Debtor is under no legal or practical compulsion to pay $655 a month to his retirement account.[10] The record is inconclusive as to whether debtor made a similar retirement contribution pre-petition and, if so, for how long. Debtor has provided no evidence to suggest that these contributions are necessary to preserve assets of the estate, nor has he suggested any undue hardship would occur if all of the proposed retirement contributions are not made. Absent disability, Debtor's age (approaching retirement),[11] or other exten-

---

9. *See supra* text of note 2.

10. In comparison, the Johnsons were paying $546.79 a month into their 401(k) plans and $581.93 to repay loans covered by § 1322(f). *In re Johnson,* 346 B.R. 256, 263.

11. For most IRAs this would be 59½ as withdrawals are generally not allowed earlier; however, the age for receiving Social Security benefits is pegged to age 62, 65 and older.

uating circumstances, foregoing or substantially reducing retirement contributions for the length of the plan is unlikely to unreasonably impair Debtor's ability to obtain his fresh start.

▇ A plan that proposes to pay 0% to creditors when a debtor could pay substantially more is not a plan proposed in good faith. Neither the history nor the text of § 541(b)(7) suggests Congress sought to diminish the requirement of good faith; in fact, the apparent intent was the opposite. The BAPCPA addition of § 1325(a)(7) requiring that the petition be filed in good faith in addition to the existing requirement that the *plan* be proposed in good faith indicates the opposite. The totality-of-the-circumstances test established by *Kitchens* provides ample support for the conclusion that good faith remains a requirement for a plan to be confirmed.

Achieving an appropriate balance between payment of unsecured creditors and saving retirement funds is the natural end of viewing the totality of Debtor's circumstances. That result cannot be achieved in this case without additional evidence only Debtor can provide, including the details of all prepetition contributions to any retirement account(s) by providing pay advices, institutional statements or sworn statements by the account administrator for any retirement plan, beginning with the first contribution through the present; and including documentation regarding any loan from any retirement account.

Full and complete disclosure of financial circumstances is required to obtain the privilege of discharging debt through confirmation of a Chapter 13 plan; accordingly, Debtor will be given that opportunity. Accordingly, it is hereby

ORDERED that, on or before June 30, 2007, Debtor shall file the following information:

1) How many ERISA-qualified retirement accounts are or have been, within the year prior to the filing of Debtor's bankruptcy petition, in the name or control of the debtor or his spouse, including accounts whose value is $0 or negative or have been closed?

2) For any ERISA-qualified retirement accounts, what are the values of these accounts as of the petition date, and as of June 1, 2007?

3) Regarding Debtor's loan from a qualified plan that has a service of $100 a month:

When was the loan taken?

What was the amount of the loan?

What is the repayment period of the loan?

What is the interest rate of the loan?

What was the intended purpose of the loan, as stated in the loan application?

For what purpose were the proceeds of this loan actually used?

4) On the date a year prior to the filing of the bankruptcy petition, did the debtor or his spouse have any equity in an ERISA-qualified retirement account?

5) For the time period beginning a year before the filing of the bankruptcy petition and ending on the date of this order, did Debtor or his spouse open any new ERISA-qualified retirement accounts or possess any accounts that had not been funded or to which Debtor or his spouse contributed?

6) For the year prior to the filing of the bankruptcy petition, itemize all contributions by Debtor or his spouse to ERISA-qualified retirement accounts.

7) If Debtor believes that these disclosures alone would not fully represent the nature of the retirement contributions, he should include additional relevant information.

Upon review of the information provided by Debtor, the Trustee may schedule a continued 341 meeting or a Rule 2004 examination or may seek additional information from Debtor by request.

Continued hearing on confirmation of Debtor's plan will be held in Courtroom 1204, United States Courthouse, 75 Spring Street, S.W., Atlanta, Georgia 30303, on the 12th day of July, 2007, at 3:00 o'clock p.m.

**The Clerk, U.S. Bankruptcy Court, is directed to serve** a copy of this order upon Debtor, Debtor's attorney, the Chapter 13 Trustee, and all creditors and parties in interest.