## In re Raymond Hamilton THOMAS, Debtor.

### No. 10–67280–MHM.

United States Bankruptcy Court,
N.D. Georgia,
Atlanta Division.

Dec. 19, 2010.

Robert J. Semrad & Associates, LLC, Atlanta, GA, for Debtor.

Adam M. Goodman, Atlanta, GA, Chapter 13 Trustee.

**ORDER**

MARGARET H. MURPHY, Bankruptcy Judge.

Debtor proposed an amended Chapter 13 Plan in which he contributes none of his Social Security Income ("SSI") and pays a zero dividend to unsecured creditors (the "Plan"). The Plan raises two issues: first, whether Debtor's "projected disposable income" must include his SSI and second, whether Debtor's Plan is proposed "in good faith." At the Confirmation Hearing held May 20, 2010, this Court directed the parties to brief the first issue.

**Facts**

Debtor filed this Chapter 13 bankruptcy petition March 11, 2010.[1] Debtor's originally filed Schedule I revealed total monthly income of $3,876.43, of which $1,429.70 is SSI. On Schedule J,[2] Debtor deducted the $1429.70 of SSI as exempt, resulting in monthly net income of $500.43. On May 13, 2010, Debtor amended Schedule J to omit the deduction of SSI income, resulting in monthly net income of $1959.43. On the same day, Debtor filed an amended Plan which provided for payments of $607.00 per month over the applicable commitment period of sixty months.[3] The Plan provided for no dividend to general unsecured creditors (a so-called "zero percent plan").

Trustee objects that Debtor's Plan was not proposed in good faith as required by § 1325(a)(3), because the Plan proposes to pay no dividend to general unsecured creditors while allowing Debtor to keep a sur-

---

1. A Chapter 13 petition is always voluntary. The date the initial petition is filed commencing a case under 11 U.S.C. § 101 *et seq.* is generally referred to as "the petition date."

2. Scheduled I is projected monthly income; Schedule J is projected monthly expenses.

3. Debtor's Form 22C (the "means test" form) shows a monthly income of $3649.01, which is an annualized income of $43,788.12. Because Georgia's median family income of $40,691.00 is less than the Debtor's annualized income, the applicable commitment period is five years. 11 U.S.C. § 1325(b)(4).

plus of $1352.43 a month from his SSI. If Debtor devoted all the surplus derived from SSI to fund the Plan, then the Plan could be concluded in 21 months with a 100% dividend to unsecured creditors. Following the May 10, 2010, Confirmation Hearing, the parties filed briefs regarding whether projected disposable income as used in § 1325(b)(1)(B) ("PDI") includes SSI.

## Projected Disposable Income

To decipher the link between PDI and SSI, one must traverse the path marked by Congress in the Bankruptcy Code, 11 U.S.C. § 101 *et seq.* ("Code"). The recent U.S. Supreme Court case of *Hamilton v. Lanning* provides some guidance. —— U.S. ——, 130 S.Ct. 2464, 2471, 177 L.Ed.2d 23 (2010). If an unsecured creditor or a trustee objects to confirmation, § 1325(b)(1) inhibits confirmation unless the proposed plan either pays all unsecured creditors' allowed claims in full, or pays all of a debtor's PDI received during the applicable commitment period. Under the principles set forth in *Lanning*, PDI is a forward-looking analysis of a debtor's income during the plan's applicable commitment period. PDI is often a direct function of disposable income, which is defined in § 1325(b)(2) as the current monthly income ("CMI") received by a debtor, less necessary and reasonable expenses. *Id.* The Code defines CMI as the average monthly income of a debtor during the six months prior to filing. 11 U.S.C. § 101(10A)(A). The Code, however, explicitly excludes SSI from CMI. 11 U.S.C. § 101(10A)(B).[4]

■ Although the usual formula for computing PDI is the CMI multiplied by the applicable commitment period, *Lanning* cautioned against a "mechanical ap-proach" in applying this formula. 130 S.Ct. at 2471. If a debtor's income or expenses in the six months prior to the petition date will be significantly different from a debtor's income during the plan period, using the mechanical approach "would produce senseless results" and unrealistic projections. *Id.* at 2476. To more appropriately calculate PDI, courts may use their discretion to account "for changes in debtor's income and expenses that are known or virtually certain at the time of confirmation." *Id.* at 2478. In the instant case, however, Debtor's pre-petition and post-petition income will not be significantly different. Debtor simply seeks to exclude from PDI the same income that is excluded from CMI.

In the case of *In re Cranmer*, the court held that a debtor's SSI should be excluded from CMI, but still included in PDI. 433 B.R. 391, 395–99 (Bankr.D.Utah 2010). The *Cranmer* court concluded that a debtor's SSI should be considered in PDI because *Lanning* allows courts to account for "known or virtually certain information about the debtor's future income." *Id.* at 395 (citing 130 S.Ct. at 2474–75). *Cranmer* also relied upon the case of *In re Schnabel* in which the court included SSI in PDI because a debtor's "fresh start is not imperiled by requiring him to make payments to creditors out of his social security and pension benefits." 153 B.R. 809, 818 (Bankr.N.D.Ill.1993).

*Cranmer's* analysis, however presents two issues. First, *Cranmer* states, "The term 'projected disposable income' was not changed by BAPCPA." *Cranmer*, 433 B.R. at 396 (citing *In re Wilson* 397 B.R. 299, 305 (Bankr.M.D.N.C.2008)). The very

---

4. It's easier to think of CMI as "defined monthly income," because the result obtained from its definition is, generally, concluded by practitioners to be neither "current," "monthly," or "income" as the plain meaning of those terms might indicate.

next sentence of the case that *Cranmer* relies upon, *In re Wilson*, states:

> However, BAPCPA changed the definition of "disposable income" in Section 1325(b)(2). Pre–BAPCPA, "disposable income" for an individual debtor was defined as "income received by the debtor which is not reasonably necessary to be expended" for the maintenance or support of the debtor or a dependent. 11 U.S.C. § 1325(b)(2)(A) (1986). Post BAPCPA, "disposable income" for an individual debtor is defined as "current monthly income received by the debtor ... less amounts reasonably necessary to be expended" for the maintenance or support of the debtor or a dependent. 11 U.S.C. § 1325(b)(2)(A) (2005).

*Id.* In most cases, PDI "means past average disposable income multiplied by the number of months in the debtor's plan." *Hamilton v. Lanning*, 130 S.Ct. at 2471. Therefore, BAPCPA indirectly changed the meaning of PDI. *Cranmer* relies upon *Schnabel*, which grounded its inclusion of SSI in PDI on the lack of "express or even implicit limitation in § 1325(b)(2) on 'income' relating to its exempt status." 153 B.R. at 816. As *Wilson* notes, pre-BAPCPA, disposable income in § 1325(b)(2) was based on an undefined term, "income." 397 B.R. at 305. Post–BAPCPA, CMI is a defined term that explicitly excludes SSI and determines the composition of disposable income.

Second, *Cranmer* may misinterpret *Lanning's* allowance that "courts may go 'further and take into account other known or virtually certain information'." 433 B.R. at 396 (quoting 130 S.Ct. at 2474). "Information," as used in *Lanning*, applies to such information about the changes that have occurred, or will almost certainly oc-

cur, in a debtor's income or expenses. *Id.* at 2475, 2478. *Lanning* allows judicial discretion when "a debtor's disposable income during the six-month look-back period is either substantially lower or higher than the debtor's disposable income during the plan period." *Id.* at 2475. The "unusual case," per *Lanning*, which allows courts to stray from § 1325(b)(2)'s formula for disposable income, occurs when CMI used to calculate disposable income will be substantially different from a debtor's disposable income during the plan period.[5] If a debtor will receive substantially the same income in the six month look-back period of § 1325 and the plan period, a debtor's disposable income, as derived by CMI, will not be different.

The case of *In re Barfknecht* held that SSI is included in neither CMI nor PDI. 378 B.R. 154 (Bankr.W.D.Tex.2007). CMI "describes the sources of revenue that constitute income, as well as those that do not." *Id.* at 161 (citations omitted). According to § 1325(b)(2), disposable income is a direct function of CMI and disposable income is the starting point for calculating a debtor's PDI. *Id.* "It is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another." *Id.* (quoting *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994)). Therefore, a debtor's PDI must be a function of a debtor's disposable income and the limitations attached through CMI. *Barfknecht*, 378 B.R. at 162. One of the limitations on CMI is the exclusion of SSI. *See e.g., In re Scholz*, 427 B.R. 864, 871 (Bankr.E.D.Cal.2010) (Railroad Retirement Act benefits are excluded from CMI because they are analo-

---

**5.** In *Lanning*, a one-time buy-out of that debtor's former employer greatly increased the debtor's income. The Court affirmed the

10th Circuit's decision to allow lower plan payments than the formula of § 1325(b)(2).

gous to SSI benefits); *In re Allawas,* 2008 WL 6069662 *1, *3 (Bankr.D.S.C.2008); *In re Devilliers,* 358 B.R. 849, 866 (Bankr. E.D.La.2007); *In re Ward,* 359 B.R. 741, 745 (Bankr.W.D.Mo.2007); *In re Upton,* 363 B.R. 528, 535 (Bankr.S.D.Ohio 2007).

■■ Considering both the plain meaning of the Code and *Lanning,* SSI is not part of PDI. While PDI *is* a forward-looking analysis of disposable income, disposable income is, by statute, a direct function of CMI, which excludes SSI. Following *Lanning,* courts should follow the directives of § 1325 and derive PDI from CMI, unless a debtor's circumstances change so the disposable income during the plan period will be significantly different from the disposable income in the look-back period.

## Good Faith

■■ Trustee objects to the proposed plan on the ground that it violates Debtor's obligation to propose a plan in good faith. 11 U.S.C. § 1325(a)(3). Debtor has the burden of proving good faith by a preponderance of the evidence. *Smyrnos v. Padilla (In re Padilla),* 213 B.R. 349, 352 (9th Cir. BAP 1997). *See* Fed. R. Bankr.P. 3015(f), 9014(d). Technical compliance with the Code is insufficient to satisfy the good faith requirement; otherwise, it would be rendered superfluous by

§ 1325(a)(1), which requires compliance with the Code. *In re Devilliers,* 358 B.R. 849, 867 (Bankr.E.D.La.2007). Nonetheless, "it should be the rare debtor whose proposed plan is technically in compliance with § 1325(b) but cannot meet the burden of good faith." *Id.*

■■ The Eleventh Circuit Court of Appeals uses a *totality of the circumstances* approach to determine whether a Chapter 13 debtor's plan satisfies the good faith requirement of § 1325(a)(3). *In re Saylors,* 869 F.2d 1434 (11th Cir.1989); *Kitchens v. Georgia RR Bank and Trust Co. (In re Kitchens),* 702 F.2d 885 (11th Cir.1983); *In re Shelton,* 370 B.R. 861(Bankr.N.D.Ga.2007) (Murphy, J.).[6] The *totality of the circumstances* test is flexible and fact specific. *See Kitchens,* 702 F.2d at 889. Among many factors, courts may consider excluded and exempt assets that could create a surplus for a debtor or illustrate a manipulation of the Code. *Shelton,* 370 B.R. at 868. *See In re Caldwell,* 895 F.2d 1123, 1126–27 (6th Cir. 1990). *But see In re Barfknecht,* 378 B.R. 154, 165 (Bankr.W.D.Tex.2007) (express exclusion of SSI from income inhibits a court from considering the income and surplus derived from the SSI as part of the good faith analysis). A plan's attempt to pay creditors may not satisfy the good faith requirement if the plan is not "consis-

**6.** The *totality of the circumstances* approach once included 11 non-exclusive factors: "(1) the amount of the debtor's income from all sources; (2) the living expenses of the debtor and his dependents; (3) the amount of attorney's fees; (4) the probable or expected duration of the debtor's Chapter 13 plan; (5) the motivations of the debtor and his sincerity in seeking relief under the provisions of Chapter 13; (6) the debtor's degree of effort; (7) the debtor's ability to earn and the likelihood of fluctuation in his earnings; (8) special circumstances such as inordinate medical expense; (9) the frequency with which the debtor has sought relief under the Bankruptcy

Reform Act and its predecessors; (10) the circumstances under which the debtor has contracted his debts and his demonstrated *bona fides,* or lack of same, in dealings with his creditors; (11) the burden which the plan's administration would place on the trustee." *In re Kitchens,* 702 F.2d 885, 888 (11th Cir.1983). Over time, explicit code provisions have overridden some of *Kitchens'* factors. *In re Shelton,* 370 B.R. 861, 866 (Bankr.N.D.Ga.2007) (citing *Keach v. Boyajian,* 243 B.R. 851, 867–68 (1st Cir. BAP 2000)); *In re Johnson,* 346 B.R. 256, 263 (Bankr.S.D.Ga.2006).

tent with a debtor's available resources." *In re Okoreeh–Baah,* 836 F.2d 1030, 1033 (6th Cir.1988). Courts also compare a "debtor's choices in relation to [the] treatment of creditors." *See In re Allawas,* 2008 WL 6069662 *1 at *5 (Bankr.D.S.C. 2008). By enacting BAPCPA, "Congress . . . indicated a clear intent to curb opportunistic filings and its displeasure with the practice of allowing debtors, who are able to repay their debts, to avoid their obligations to creditors." *In re Edmunds,* 350 B.R. 636, 649 (Bankr.D.S.C.2006) (citing H.R.Rep. No. 109–31(1), at 5 (2005)). Another factor is the amount of effort required by a debtor to complete the plan. *Kitchens,* 702 F.2d at 889. The easiest way to fail the good faith test, however, is for a debtor to "misrepresent, lie or otherwise mislead the court." *Shelton,* 370 B.R. at 868 (citing *In re Le Maire,* 898 F.2d 1346, 1352 (8th Cir.1990)). *See also In re Westing,* 2010 WL 2774829 *1, *3–*4 (Bankr.D.Idaho July 13, 2010); *In re Rodgers,* No. 09–13886–ALP at 3 (Bankr. M.D.Fla. May 19, 2010).

The probable surplus income of a debtor, together with a debtor's choices in the plan's treatment of creditors, are the most relevant factors to the good faith analysis in this case. In the *Shelton* case, that debtor's plan paid a zero dividend to unsecured creditors, but the debtor proposed to contribute $655 per month to his retirement fund. 370 B.R. at 863. Although those retirement contributions were exempted from CMI, and therefore PDI, the debtor was not compelled to make the contributions. The *Shelton* opinion noted

that the underlying goal of the *totality of circumstances* test was balancing the need for contributing to a fresh start for the debtor against a fair distribution to creditors. The *Shelton* debtor provided no evidence that the contributions to his retirement fund were necessary to preserve assets of the estate or safeguard him against undue hardship as part of his fresh start. "A plan that proposes to pay 0% to creditors when a debtor could pay substantially more is not a plan proposed in good faith." *Id.* at 869.[7]

Since BAPCPA, two bankruptcy courts have addressed how a surplus resulting from retention of SSI benefits impacts the good faith inquiry. In the case of *In re Green,* the court reasoned that after § 1325(b)(2)'s addition to the Code, "[c]onsideration of a debtor's finances as part of the good faith inquiry has not been abandoned." 2010 Bankr.Lexis 945 *1, *10–*11 (Bankr.W.D.Mo.2010). However, while acknowledging that "ability to pay" is no longer the key determinant in a good faith analysis, the *Green* court stated firmly that debtors' retention of SSI could not "serve as the sole basis for a finding of bad faith." *Id.*

The court in *In re Upton* found debtors' $32,340.00 surplus income over the life of the plan "weighs heavily against a finding that the Debtors' plan is proposed in good faith pursuant to 11 U.S.C. § 1325(a)(3)." 363 B.R. 528, 536 (Bankr.S.D.Ohio 2007).[8] The above-median income debtors proposed to exclude a portion of SSI while paying unsecured creditors a dividend of only ten percent. As a result, the debtors

---

**7.** The debtor was required to file supplementary financial materials to illustrate whether he had contributed to his retirement account or opened new retirement accounts in the year prior to the petition date. Without the supplemental financial information, the debtor's good faith intentions could not be determined.

**8.** The *Upton* debtors did not put on evidence of good faith because they believed that good faith could be determined as a matter of law. The court disagreed but allowed debtors to present evidence on the issue. 363 B.R. at 537.

would, implicitly, be able to accumulate over $32,000 in savings over the course of the plan if confirmed. The court concluded that neither § 1325 nor good faith "permits debtors to accumulate savings while paying unsecured creditors less than 100%." *Id.*

A strong tension exists between a court's consideration of a debtor's retention of SSI in the good faith analysis and the explicit statutory treatment that allows debtors to retain SSI. *Barfknecht* provides important warnings against a *per se* rule of bad faith for retention of income which would swallow explicit statutory treatment. *See* 378 B.R. 154, 164 (Bankr. W.D.Tex.2007). The flexibility of the *totality of circumstances* test, however, mitigates concerns about a *per se* rule. SSI is vital to many Americans because it provides predictable and certain benefits. *See Devilliers,* 358 B.R. at 865–66 (citations omitted). Nonetheless, SSI is income and a debtor should not be allowed to shield all of that income while paying unsecured creditors nothing.

### Conclusion

Under a plain reading of the Code, Debtor's SSI is excluded from PDI. *Lanning's* allowance for judicial discretion when CMI will be substantially higher or lower than the PDI for the plan period is not applicable. Because PDI does not encompass SSI, receipt of SSI during the plan period will not impact PDI, much less make PDI substantially higher or lower than CMI.

 Debtor's plan, however, does not pass the requirement of good faith under § 1325(a)(3). As Trustee noted, if Debtor contributed all his Schedule J net monthly income to his plan, all unsecured creditors could be paid in full within twenty-one months. Debtor's plan instead creates a surplus of more than two times his plan payment every month without *any* pay-

ment to unsecured creditors. Considering the totality of the circumstances, Debtor's plan is not proposed in good faith; a balance must be struck. Accordingly, it is hereby

ORDERED that confirmation is **denied;** however, within 28 days of entry of this order, Debtor may file an amended plan. If no amended plan is filed in the time allowed, this case may be dismissed without further notice or hearing.

**The Clerk, U.S. Bankruptcy Court, is directed to serve** a copy of this order upon Debtor, Debtor's attorney, the Chapter 13 Trustee, and all creditors and parties in interest.

IT IS SO ORDERED.