**ORDERED PUBLISHED**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

In re:                              )   BAP No.   MT-10-1465-PePaH
                                    )
DAVID C. WELSH and SHARON N.        )   Bk. No.   10-61285
WELSH,                              )
                                    )
            Debtors.                )
_____     )
                                    )
ROBERT G. DRUMMOND, Chapter 13)
Trustee,                            )
                                    )
            Appellant,              )
                                    )
v.                                  )   **O P I N I O N**
                                    )
DAVID C. WELSH; SHARON N.           )
WELSH,                              )
                                    )
            Appellees.              )
_____     )

Argued and Submitted on November 16, 2011
at Pasadena, California

Filed - February 17, 2012

Appeal from the United States Bankruptcy Court
for the District of Montana

Honorable Ralph B. Kirscher, Chief Bankruptcy Judge, Presiding
_____

Appearances:    Robert G. Drummond appeared pro se.
                Edward A. Murphy appeared for appellees David C.
                and Sharon N. Welsh
                _____

Before:  PERRIS,[1] PAPPAS, and HOLLOWELL, Bankruptcy Judges.

_____

[1]     Hon. Elizabeth L. Perris, Bankruptcy Judge for the District of Oregon, sitting by designation.

PERRIS, Bankruptcy Judge:

In this chapter 13[2] case, the bankruptcy court confirmed a chapter 13 plan under which debtors David and Sharon Welsh ("debtors") proposed to retain and continue to make payments on six vehicle loans and that did not take into account monthly Social Security income. The chapter 13 trustee appeals the order confirming the plan, arguing that the bankruptcy court should have considered both the payments on what he characterizes as unnecessary vehicles and the Social Security income in determining whether the plan was proposed in good faith.

Because we conclude that the bankruptcy court applied the correct legal standard in determining good faith, we AFFIRM.

FACTS

Debtors filed a chapter 13 petition in May 2010. Debtors had moved to Montana from North Carolina in 2006. After living in rented housing for a time, debtors purchased an unfinished house and obtained a construction loan to complete it. When the construction loan was insufficient to pay for completion of the work on the house, debtors used credit cards to finance the rest of the construction.

After making payments on the credit card debt for 18 months, debtors consolidated that debt at an interest rate of 15 percent. Thereafter, they encountered financial difficulties and filed a chapter 13 bankruptcy petition.

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq.

2

Sharon Welsh ("Sharon") works as a nurse at a hospital, earning $6,975 per month. She also receives $1,100 per month in pension income from an earlier employer. David Welsh ("David") is unable to work because of a medical condition, and his condition will not improve. He is retired and unemployed, but reported that he receives $358 from wages, salary and commission each month. He also receives $1,165 per month in Social Security retirement income.

Debtors valued their house at $400,000, on which they owe $330,593. Their monthly mortgage payment is $2,177. They reported unsecured nonpriority claims of $180,504.15, of which $60,000 is a guaranty of their daughter's student loan debt. The bulk of the remainder is credit card debt.

They own and make payments on six motor vehicles. According to debtors' schedules and the proofs of claim filed by secured creditors, many of those vehicles are over-encumbered. According to the schedules, debtors owe $3,065 on one Honda ATV and $4,500 on a second Honda ATV; each is valued at $2,700.[3] Debtors have a debt of $37,936 secured by an Airstream trailer valued at $23,000. They own a 2006 Subaru Outback valued at $9,500 on which debtors owe $10,680; a 2005 Toyota Matrix worth $2,200 on which they owe $1,380; and a 2005 Ford F-250 valued at $10,000 on which they owe $10,838.

---

[3] The bankruptcy court found that AHFC had filed a claim in the amount of $2,533.15 secured by a 2007 ATV. If the $2,700 value attributed to each ATV is correct, the one securing the AHFC loan is not over-encumbered.

3

Although David owns the Toyota,[4] it is used by debtors' daughter, who is a medical resident. According to Sharon's testimony, their daughter is unable to make the payments on the Toyota because she pays approximately $1,000 per month on student loans of $150,000.

Debtors use one of the ATVs to plow their driveway in the winter. Debtors' house is at the top of a ridge, at the end of a mile-long driveway with hairpin curves. Plowing is necessary because the cars cannot make it up the driveway in the winter unless the driveway is plowed. They also use the ATVs to drive on nearby Nature Conservancy land. They use the Airstream trailer as lodging when they have guests staying with them.

Debtors completed Form B22C, which contains calculations necessary to determine both the required length of a chapter 13 plan and the amount that must be paid to unsecured creditors through the plan. The form requires a calculation of income along with deductions of expenses, to determine what disposable income a debtor has available.

Debtors' Form B22C lists current monthly income of $8,116.31, which does not include David's Social Security income. This income is above the median for a household of the size of debtors' household.

In calculating their deductions from income, debtors deducted, in addition to other unchallenged deductions, monthly payments on the six debts secured by motor vehicles, which total

---

[4] Sharon testified that she bought the Toyota. However, the bankruptcy court found that the certificate of title and promissory note both show that David is the owner.

4

$1,350.22 per month. Deducting all of the expenses from the current monthly income resulted in monthly disposable income listed on Line 59 of Form B22C of $218.12.

Debtors' Schedules I and J, which set out anticipated income and actual expenses, show monthly income of $7,692.68 (which includes the Social Security payments) and expenses of $7,298.00, for a monthly net income of $394.68. Schedule J shows that the monthly payments on the vehicles total $1,879, including $113 and $158 for the two ATVs, $419 for the Airstream trailer, and $150 for the Toyota that is used by debtors' daughter.

Debtors' plan proposes to pay $125 per month for 30 months, then $500 per month for 30 months, for a total of $18,750 in plan payments. The increase is a result of paying off the Subaru, Ford F-250, and Toyota during the life of the plan. Sharon testified that, although the payments on those three vehicles will end during the plan period of sixty months, they will have to replace the Subaru, because it has high mileage and she drives it 75 miles every day.

The trustee objected to confirmation of debtors' plan, arguing that it was not proposed in good faith. He objected to what he characterizes as "minuscule" payments to unsecured creditors while debtors live in a $400,000 home and make payments on several secured claims, and that debtors failed to commit all of their disposable income to payments but instead are deducting payments for unnecessary secured claims.

The court held a confirmation hearing at which it heard testimony. The bankruptcy court wrote an opinion explaining the decision to confirm the chapter 13 plan over the trustee's

5

objection. The court concluded that David's Social Security income was properly excluded from the calculation of projected disposable income. It also considered whether the plan was proposed in good faith, as required by § 1325(a)(3). The court took into account the totality of the circumstances and, in particular, addressed the factors set out in Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224-25 (9th Cir. 1999). The court rejected the trustee's argument that the facts that debtor's plan will pay only 8.5 percent of unsecured claims while debtors retain and continue to make payments on a trailer, two ATVs, and three vehicles, shows egregious conduct that indicates a lack of good faith.

The court also pointed out that the payments on the secured debts are authorized in the means test under § 707(b)(2)(A). Debtors were current on all of those debts, so the court refrained from determining whether the payments were reasonable.

The court rejected the trustee's argument that debtors' exclusion of David's Social Security income from the disposable income calculation shows a lack of good faith. The court concluded that debtors had satisfied their burden of proving that their plan was proposed in good faith, and overruled the trustee's objections to confirmation.

The trustee appeals. He says that his argument is limited to the bankruptcy court's determination of good faith, which he argues was based on an incorrect view of the law. However, he also argues that the court erred in allowing debtors' deductions from income for the secured debt payments on what he views as unnecessary, luxury items. Therefore, we will address both

6

issues.

ISSUES

1.  Whether in calculating disposable income under § 1325(b) a debtor can deduct expenses for payments on secured debts regardless of the need for the collateral securing those debts.

2.  Whether the bankruptcy court applied the correct legal standard in considering good faith under § 1325(a)(3).

STANDARD OF REVIEW

Both of the issues raised by the trustee relate to whether the bankruptcy court applied the correct legal standard, which is a question of law that we review de novo. Bunyan v. United States (In re Bunyan), 354 F.3d 1149, 1150 (9th Cir. 2004); Shook v. CBIC (In re Shook), 278 B.R. 815, 820 (9th Cir. BAP 2002).

DISCUSSION

1.  Overview

Confirmation of a Chapter 13 plan is governed by § 1325. The court shall confirm a plan if each of the requirements of § 1325 are met. § 1325(a). The debtor has the burden to prove that each element is met. Meyer v. Hill (In re Hill), 268 B.R. 548, 552 (9th Cir. BAP 2001).

Two of the Chapter 13 plan confirmation requirements are at issue in this appeal. The first is the requirement that:

> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan.

§ 1325(b)(1).[5] "Disposable income" is defined in § 1325(b)(2) as

---

[5] This requirement applies only if the trustee or an unsecured creditor objects to confirmation, which the trustee did
(continued...)

"current monthly income received by the debtor . . . less amounts reasonably necessary to be expended" for certain expenses. "Current monthly income" is defined in § 101(10A) as the debtor's average monthly income received in the six months before bankruptcy, "but excludes benefits received under the Social Security Act[.]" § 101(10A)(A), (B). For debtors whose current monthly income exceeds the median income for households of the same size in the debtor's state, "[a]mounts reasonably necessary to be expended under paragraph (2), other than subparagraph (A)(ii) of paragraph (2), shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)[.]" § 1325(b)(3).

The second requirement at issue in this appeal is that "the plan has been proposed in good faith and not by any means forbidden by law[.]" § 1325(a)(3).

2. Disposable income

The first issue is whether debtors correctly deducted their payments on secured debt from their current monthly income to determine their monthly disposable income. Although the trustee says that his "disposable income objection is not at issue in this appeal[,]" Appellant's Brief at 2, he devotes a good deal of his brief to arguing that the debts secured by unnecessary, "luxury" property should not be allowed as deductions in calculating disposable income that is then projected over the life of the plan.[6] Given the internal inconsistency in the brief

---

[5](...continued)
in this case.

[6]     Although the trustee argued to the bankruptcy court
(continued...)

8

regarding whether, for above-median income debtors, all current secured debt payments are proper expense deductions regardless of the debtor's reasonable need for the collateral, we start our analysis with that question.

"Disposable income" is a defined term. It "means current monthly income received by the debtor . . . <u>less amounts reasonably necessary to be expended</u> —

> (A)(i) for the maintenance or support of the debtor or a dependent of the debtor . . . ; and
>
> (ii) [certain charitable contributions] and
>
> (B) [certain business expenses].

§ 1325(b)(2) (emphasis supplied). "Amounts reasonably necessary to be expended" under § 1325(b)(2)(A)(i) and (B) "shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)" if the debtor has above-median income. § 1325(b)(3).

Section 707(b)(2)(A) sets out the means test for presumed abuse in filing a chapter 7 petition. Section 1325(b)(3) incorporates the means test for determining the expenses to be used in determining disposable income for above-median-income debtors. The means test requires consideration of "the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60[.]"

---

[6](...continued)
that David's Social Security income should be included in calculating disposable income, he does not make that argument on appeal. In any event, it is clear that Social Security income is not part of disposable income. Disposable income is calculated starting with "current monthly income," which in turn excludes Social Security income. § 1325(b)(2); § 101(10A)(B).

§ 707(b)(2)(A)(i).  As relevant to this discussion, clause (ii) provides:

> (I) The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief[.]

§ 707(b)(2)(A)(ii).  Clause (iii), in turn, provides:

> The debtor's average monthly payments on account of secured debts shall be calculated as the sum of —
>
> > (I) the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition; and
> >
> > (II) any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;
>
> divided by 60.

§ 707(b)(2)(A)(iii) (2010).

Read together, § 707(b)(2)(A)(ii) and (iii) have been understood to allow a debtor to deduct from current monthly income those expenses set out in the IRS standards, and also any payments on secured debt that will come due in the sixty months after the petition date.  See 6 COLLIER ON BANKRUPTCY ¶ 707.04[3][c] at 707-37 (16th ed. 2011) ("[T]he means test allows deduction of amounts payable on secured and priority debts, presumably on the theory that a debtor should not be forced to default on secured or priority debts in order to pay general unsecured debts in a chapter 13 case."); Eugene R. Wedoff, Means Testing in the New

10

§ 707(b), 79 AM. BANKR. L.J. 231, 274 (2005) (deduction for payments on secured debt not dependent on whether the property securing the debt is necessary or a luxury).

The trustee argues that this interpretation of the statute is wrong and that, rather than allowing an expense deduction for all payments on secured debts that will come due after the petition, (iii) is merely interpretive of § 707(b)(2)(A)(ii). In other words, (iii) directs how to calculate the amount that may be deducted for secured debt when that secured debt is allowed by the IRS as a "necessary" expense.

Although this approach would be consonant with one of Congress's purposes in enacting the 2005 amendments to the Bankruptcy Code ("BAPCPA") of assuring that debtors who can afford to pay their unsecured creditors do so, the statutory language does not support that interpretation. Section 707(b)(2)(A)(i) says that a debtor's current monthly income must be "reduced by the amounts determined under clauses (ii), (iii), and (iv)[.]" Amounts determined under clause (ii) are amounts set out in the IRS standards. Amounts determined under clause (iii) are payments on secured debts. Amounts determined under § 707(b)(2)(A)(iii) are used to reduce the debtor's current monthly income, just as amounts determined under § 707(b)(2)(A)(ii) are used to reduce income.

The structure of § 707(b)(2)(A)(iii) also supports reading (iii) as a stand-alone expense provision. Section 707(b)(2)(A)(iii)(I) refers to "the total of all amounts scheduled as contractually due to secured creditors [in the future.]" Section 707(b)(2)(A)(iii)(II) refers to cure payments

11

on a "debtor's primary residence, motor vehicle[s], or other property necessary for the support of the debtor and the debtor's dependents[.]" If the future secured debt payments referred to in § 707(b)(2)(A)(iii)(I) were limited to secured debt payments on property necessary for the debtor's or debtor's dependents' maintenance and support, there would be no reason for § 707(b)(2)(A)(iii)(II) to limit allowable cure payments to cure payments on <u>necessary</u> property. Accord COLLIER at ¶ 707.04[3][c] at pp. 707-37 (because amounts for cure are limited to necessary property, "it is clear that the contractual payments are not limited to only those secured debts that are for necessary property"); Wedoff, 79 AM. BANKR. L.J. at 274 (in contrast to deductions for currently due payments on secured debt, deductions for curing arrearages on secured debt are allowed only if property securing the debt is necessary to support the debtor's needs).

To the extent there is any ambiguity in the statute, the legislative history supports the common understanding. In explaining the means test, the House Report describes the expenses specifically mentioned in the statute, then lists as one of "other specified expenses"

> the debtor's average monthly payments on account of secured debts, including any additional payments to secured creditors that a chapter 13 debtor must make to retain possession of a debtor's primary residence, motor vehicle, or other property necessary for the support of the debtor and the debtor's dependents that collateralizes such debts[.]

H.R. Rep. No. 109-31, Pt. 1, 109th Cong., 1st Sess. (2005) at 13 n.61.

We conclude that the means test of § 707(b)(2)(A), which is

12

incorporated into chapter 13, allows a debtor to deduct from current monthly income payments on secured debts, averaged over sixty months as provided in § 707(b)(2)(A)(iii), regardless of whether the collateral is necessary. The bankruptcy court did not err in allowing debtors to make those deductions in their disposable income calculation.

Neither party cites Am. Express Bank, FSB v. Smith (In re Smith), 418 B.R. 359 (9th Cir. BAP 2009), or Yarnall v. Martinez (In re Martinez), 418 B.R. 347 (9th Cir. BAP 2009), both of which examined a debtor's ability to deduct secured debt payments in calculating disposable income. In Smith, the debtors had deducted amounts contractually due on two homes and a motor vehicle that they intended to surrender. In Martinez, the debtors had deducted payments that they were contractually obligated to make on a mortgage that they were going to strip in their chapter 13 plan.

In rejecting the debtors' ability to deduct the secured debt payments that debtors would not be paying in Smith and Martinez, the panel held that § 1325(b)(2) and § 1325(b)(3) must be read in sequence, so that if an expense is reasonably necessary for a debtor's or debtor's dependent's maintenance and support, then the amount of the expense deduction is determined by the means test of § 707(b)(2)(A). It reasoned that "[s]ection 1325(b)(2) . . . requires the court to look at the necessity of the expense as determined by the debtor on a real-time, forward-looking basis, while section 1325(b)(3)'s incorporation of section 707(b) requires a static, backward-looking inquiry[.]" Martinez, 418 B.R. at 356; accord Smith, 418 B.R. at 369.

13

Those cases do not mean that, where the debtor retains property securing debt, does not strip the security interest, and deducts the secured debt payment as an expense in applying the means test, the bankruptcy court must determine whether the encumbered property the debtors intend to retain is necessary or unnecessary. The panel in Smith rejected the idea that the court is required to determine whether property is necessary:

> Debtors cannot have it both ways. Once they determine that certain assets secured by liens are not necessary, and they surrender those assets, the corresponding debts disappear from section 1325(b)(2) and there is no need to resort to section 1325(b)(3) and its dispatch to the mechanical formulas of section 707(b)(2)(A) & (B). The dissent suggests that we have restored to the bankruptcy court the pre-BAPCPA discretion to decide what are reasonable expenses. Not so – the debtors made the decision about what assets they retained and what assets they surrendered. Under our analysis the role of the bankruptcy court is simply to hold them to the consequences of their decision.

418 B.R. at 370-371 (emphasis supplied).

Smith and Martinez are factually distinguishable from this case in which debtors intend to both retain and to pay for the collateral without avoiding any liens. In Smith and Martinez, the debtors, not the court, made the necessity determination. The panel specifically rejected the idea that the court would have to make a determination of necessity where the debtors have chosen to retain the property and continue making the payments.

We conclude that § 707(b)(2)(A)(iii) allows deduction as an expense of payments on secured debt, unless the debtor determines that payment on the outstanding amount of the secured claim is unnecessary by either surrendering the property or avoiding the lien securing the claim. The bankruptcy court did not err in allowing debtors in calculating their disposable income to deduct

14

their secured debt payments on the six vehicles that they intend to retain.

3.   <u>Good faith</u>

The trustee argues that the bankruptcy court applied an incorrect legal standard in considering whether debtors had proposed their plan in good faith.  He complains that the court failed to take into account the "subjective" totality of the circumstances of these debtors' situation by limiting consideration to the factors set out for good faith in <u>Leavitt v. Soto (In re Leavitt)</u>, 171 F.3d 1219, 1224-25 (9th Cir. 1999).  In particular, he argues that, even where a debtor has satisfied the mechanical requirements of § 1325(b), the bankruptcy court needs to consider the sufficiency of the assets devoted to plan payments, including in this case debtors' failure to include Social Security income and their deduction as expenses of payments on secured debts that are not necessary to their maintenance or support in their calculation of projected disposable income.

One of the requirements for confirmation of a chapter 13 plan is that it be proposed in good faith.  § 1325(a)(3).  "Good faith" is not defined in the Bankruptcy Code.  The Ninth Circuit has held that "the proper inquiry is whether the [debtors] acted equitably in proposing their Chapter 13 plan."  <u>Goeb v. Heid (In re Goeb)</u>, 675 F.2d 1386, 1390 (9th Cir. 1982).  In making that inquiry, the court applies a "totality of the circumstances" test, taking into consideration (1) whether the debtor misrepresented facts, unfairly manipulated the Bankruptcy Code or otherwise proposed the plan in an inequitable manner; (2) the

15

history of the debtor's filings and dismissals; (3) whether the debtor intended only to defeat state court litigation; and (4) whether the debtor's behavior was egregious. <u>Leavitt</u>, 171 F.3d at 1224 (applying same factors for good faith filing of chapter 13 petition).

The bankruptcy court in this case took each of these factors into consideration. The court expressly found that there was no evidence "that Debtors misrepresented facts in their plan or unfairly manipulated the Code," had any history of filings and dismissals, or had filed chapter 13 to defeat state court litigation. <u>In re Welsh</u>, 440 B.R. 836, 847 (Bankr. D. Mont. 2010).

In considering the fourth factor, the court rejected the trustee's argument that debtors' continuing payments on debts secured by what he characterized as luxury items, along with their payment of one of their debts[7] that allowed their adult daughter to retain a car, while paying their unsecured creditors only 8.5 percent of the claims, was egregious behavior that showed bad faith. The court found that the ATVs that debtors retained and on which they continued to make payments were not luxuries, because at least one was required to plow the driveway in the winter. It also found that the car that debtors' adult daughter used was owned by David, so it was debtors' debt. The retention and continued payment on the Airstream trailer, the

[7]    It is unclear whether it is Sharon or David who owns the car. Transcript of Confirmation Hearing at 16:20-17:5 (ER 11); 440 B.R. at 848. What is clear is that one of the debtors owns the Toyota, not their daughter.

16

court concluded, was not by itself enough to find egregious behavior. Id. at 848.

The court also rejected the trustee's argument that debtors' failure to use David's Social Security income to increase their plan payments is an indicator of egregious behavior. The court noted that § 101(10A)(B) explicitly excludes Social Security payments from the disposable income calculation, and 42 U.S.C. § 407(a) specifically provides that Social Security payments shall not be subject to operation of bankruptcy law. Id. at 850.

Although the court said that it considered the exclusion of Social Security income as one of the totality of debtors' circumstances, id. at 849, it also said that it could not find bad faith based on exclusion of Social Security payments without running afoul of 42 U.S.C. § 407(a). Id. at 850. The court went on to explain that the adequacy of plan payments is determined by the disposable income calculation, and that considering Social Security for purposes of good faith would render the exclusion of Social Security payments from the disposable income calculation meaningless. Id.

The issue is whether, in determining whether a debtor has filed a chapter 13 plan in good faith, the court may take into consideration the debtors' failure to include income for plan payments that the Code specifically excludes from current monthly income, and the debtors' deduction of expenses that are expressly allowed by the Code in calculating disposable income. In other words, if the debtor has properly calculated projected disposable income and so meets the minimum payment amount under § 1325(b)(1)(B), can items used in that calculation be the basis

17

for a finding that the plan was not proposed in good faith. We conclude that the 2005 BAPCPA modification of how disposable income is calculated does not alter the pre-BAPCPA good faith analysis.

The Bankruptcy Code does not define "good faith." In 1982, the Ninth Circuit decided Goeb, which rejected a substantial repayment requirement for chapter 13 confirmation. The court noted that the Code included a minimum repayment requirement for chapter 13 in § 1325(a)(4), by requiring that amounts paid on unsecured claims could not be less than would be paid in a chapter 7 liquidation. 675 F.2d at 1388. The "good faith" inquiry, the court concluded, required looking at whether the debtors "acted equitably in proposing their Chapter 13 plan." Id. at 1390. In making that inquiry, the "bankruptcy court must inquire whether the debtor has misrepresented facts in his plan, unfairly manipulated the Bankruptcy Code, or otherwise proposed his Chapter 13 plan in an inequitable manner." Id. Although the court could consider "the substantiality of the proposed repayment," ultimately the good faith determination must take into account "all militating factors." Id.

In 1984, Congress amended § 1325 to add § 1325(b), which for the first time introduced the requirement that, if there was an objection to confirmation of a plan by the trustee or an unsecured creditor, the debtor must provide for payment of the debtor's "projected disposable income" over the life of the

18

plan.[8] "Disposable income" was defined as income "received by the debtor and which is not reasonably necessary to be expended . . . for the maintenance or support of the debtor or a dependent of the debtor[.]" § 1325(b)(2) (1984). Disposable income was calculated relying primarily on the debtors' Schedules I and J, which reflected actual anticipated income and expenses.

This change imposed a minimum payment requirement in addition to the requirement of § 1325(a)(4) that unsecured claims would receive not less than in a chapter 7 liquidation: If there was an objection to confirmation, a debtor was required to devote his or her projected disposable income as determined by Schedules I and J to payments under the plan.

The analysis for good faith under § 1325(a)(3), however, did not change. In 1999, the Ninth Circuit again considered good faith in chapter 13 (this time in connection with good faith in filing the petition), and again required consideration of the

---

[8]     Section 1325(b)(1) provided:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan —
>
> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

§ 1325(b)(1) (1984).

19

totality of the circumstances. Leavitt, 171 F.3d at 1224. The court directed bankruptcy courts to consider (1) whether the debtor misrepresented facts, unfairly manipulated the code, or otherwise acted inequitably in filing a petition or plan; (2) any past history of bankruptcy filings; (3) whether the sole purpose of debtor's petition or plan was to defeat state court litigation; and (4) whether egregious behavior was present.

Under that formulation, the only substantial repayment requirement was that set out in the Code. Although all circumstances of the case were to be considered in determining good faith, if a debtor was devoting all projected disposable income to the plan, as calculated using Schedules I and J, the amount of plan payment was not an indicator of a lack of good faith.

The 2005 amendments changed how "disposable income" is calculated for above-median-income debtors, substituting for Schedules I and J a set formula based on historical income and expenses determined in large part by IRS formulas. BAPCPA did not, however, change the requirement that, if there is an objection to confirmation, the plan must provide for payment of all projected disposable income to unsecured creditors. All that changed as relevant to the issue in this case was how disposable income was to be determined. Instead of relying on Schedules I and J, which were based in the debtors' economic reality, Congress substituted a formula for above-median-income debtors that is not necessarily based in the debtors' economic reality.

This change in how disposable income is calculated does not change the pre-2005 good faith analysis, which requires

20

consideration of the totality of the circumstances but under which a debtor's lack of good faith cannot be found based solely on the fact that the debtor is doing what the Code allows. The dissent would hold that the good faith "totality of the circumstances" test allows the court effectively to override other statutory provisions if, after the court's "unfettered review," the court concludes that the plan treats the debtor's unsecured creditors inequitably. We disagree.

Judge Pappas explained the different post-2005 approaches to good faith:

> In light of the [2005] amendment, some courts have held that technical compliance with § 1325(b) creates a safe harbor, and precludes a finding of bad faith. See In re Alexander, 344 B.R. 742, 752 (Bankr. E.D.N.C. 2006) (finding that calculation of a debtor's disposable income must be determined under § 1325(b) and is not an element of good faith); In re Farrar-Johnson, 353 B.R. 224 (Bankr. N.D. Ill. 2006) (good faith is a factor in confirmation, but the calculations on Form B22C create a safe harbor). At the other end of the spectrum, other courts hold that § 1325(a)(3) ultimately requires a debtor to contribute all he or she can afford to pay creditors under a plan, regardless of what § 1325(b) might otherwise dictate. See In re Anstett, 383 B.R. 380, 385-86 (Bankr. D.S.C. 2008); In re Upton, 363 B.R. 528, 536 (Bankr. S.D. Ohio 2007).

In re Stitt, 403 B.R. 694, 702-03 (Bankr. D. Idaho 2008).

Some courts have adopted an intermediate approach.

> Under this approach, "the sufficiency of the assets devoted to the plan is not a basis for a finding of lack of good faith under § 1325(a)(3), unless there is a showing of some sort of manipulation, subterfuge or unfair exploitation of the Code by the debtor." In re Williams, 394 B.R. 550, 572 (Bankr. D. Colo. 2008); see also In re Briscoe, 374 B.R. 1, 22 (Bankr. D.D.C. 2007) (recognizing exceptions for debtors "engaging in subterfuge so blatant as to indicate that they have 'unfairly manipulated the Bankruptcy Code, or otherwise proposed [their] Chapter 13 plan in an inequitable manner.'" (quoting In re Goeb, 675 F.2d at 1390)).
> This approach recognizes that even where a debtor has

21

> satisfied the mechanical requirements of § 1325(b), a more subjective analysis of the debtor's good faith and the totality of the circumstances is mandated by § 1325(a)(3). In re Williams, 394 B.R. at 572.

Id. at 703.

In our view, taking advantage of a provision of the Code, such as calculating disposable income under the test explicitly set out in the Code, is not an indication of lack of good faith. Thus, we reject those cases that allow a court to take into consideration an above-median-income debtor's exclusion of income or deduction of expenses that are allowed by the means test formula in determining whether a debtor has proposed the plan in good faith.

Section 1325(a)(3) still plays a role, and the court must take into consideration the totality of the circumstances, based on the factors the Ninth Circuit has articulated for determining good faith. If, in proposing a plan, the debtor has misrepresented facts, unfairly manipulated the Code, or engaged in egregious behavior,[9] a court may find that the plan was not proposed in good faith. That finding may not, however, be based on the mere fact that the debtor has excluded income or deducted expenses that the Code allows.

The dissent argues that the bankruptcy court should have considered debtors' failure to cram down the secured debts owed on the over-encumbered items of personal property, presumably to

---

[9] The other two considerations, the debtor's history of bankruptcy filings and dismissals and whether the debtor filed chapter 13 to defeat state court litigation, are not pertinent to the question of whether a court can find lack of good faith based on the disposable income calculation.

22

free up additional funds for payments to unsecured creditors. The trustee never raised the issue of cram down, and the panel should not *sua sponte* raise good faith considerations neither argued by the parties nor considered by the bankruptcy court.

Even if we were to consider it, we would reject the view that cramming down secured debt to the fullest extent possible to pay more to unsecured creditors is required for good faith. The fundamental consideration in determining good faith under § 1325(a)(3) is whether the debtor acted equitably in proposing their chapter 13 plan. See Goeb, 675 F.2d at 1390. The dissent's view that debtors must, if possible, cram down secured creditors to pay more to unsecured creditors reallocates the equities between secured creditors and unsecured creditors. Cram-down may allow greater payments to unsecured creditors, thereby being more "equitable" to that class of creditors. We think that Congress made a policy choice in enacting BAPCPA to prefer certain payments to secured creditors over unsecured creditors in chapter 13 by providing that payments on certain secured debts are expenses that may be deducted in calculating disposable income. Whatever our view about the wisdom or fairness of that policy choice, it is Congress's choice to make, not the courts'.

The trustee points to two particular issues in this case, arguing that the court should have taken into account both the fact that debtors took expense deductions in the disposable income calculation for payments on debt secured by assets that are not reasonably necessary for debtors' or their dependents' maintenance or support, and excluded income from Social Security.

23

As we discussed above, the Code allows debtors to deduct current payments on secured claims as expenses in determining disposable income. For debtors whose income exceeds the median income, Congress has made the policy choice that payments on secured claims are "[a]mounts reasonably necessary to be expended" for the debtor's or the debtor's dependents' maintenance and support. See § 1325(b)(3); § 707(b)(2). In making its good faith determination under § 1325(a)(3), the bankruptcy court cannot find lack of good faith based on a debtor's deduction of those allowed expenses in their calculation of disposable income. To do so would be to second-guess the Congressional policy choice about what expenses are reasonably necessary for a debtor's maintenance and support.

The same analysis applies to consideration of a debtor's exclusion of Social Security income in calculating disposable income. That income is specifically excluded from the disposable income calculation for chapter 13 debtors. See §§ 1325(b)(2); 101(10A)(B). In addition, 42 U.S.C. § 407 provides, as relevant here:

> (a) The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law.

> (b) No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

(Emphasis supplied.)

Again, the cases are split on the issue of whether a

24

debtor's exclusion of Social Security income in projected disposable income is indicative of lack of good faith. Some courts hold that a debtor's failure to commit available Social Security payments to payments under the plan cannot be considered in the good faith analysis under § 1325(a)(3). See, e.g., Fink v. Thompson (In re Thompson), 439 B.R. 140, 143 (8th Cir. BAP 2010) (considering exclusion of Social Security payments from "plan payments as part of the good faith analysis would improperly render section 1325(b)'s ability to pay test meaningless[;]" debtor's retention of Social Security income not per se bad faith); In re Barfknecht, 378 B.R. 154 (Bankr. W.D. Tex. 2007) (a debtor's retention of Social Security income, while paying creditors less than 100 percent, is not evidence of bad faith; the Code specifically allows exclusion of Social Security income from disposable income calculation). Other courts hold that such a failure may be considered as part of the totality of the circumstances to determine good faith. See, e.g., In re Upton, 363 B.R. 528 (Bankr. S.D. Ohio 2007) (although Social Security payments are excluded from projected disposable income, amount of proposed plan payments and retention of surplus from excluded Social Security may be considered in determination of good faith); In re Herrmann, 2011 WL 576753 (Bankr. D.S.C. Feb. 9, 2011) (can consider whether it is good faith for a spouse not receiving Social Security income to avoid paying creditors by claiming all household expenses, leaving little disposable income, while spouse retains entire amount of Social Security payments); In re Westing, 2010 WL 2774829 (Bankr. D. Idaho July 13, 2010) (sufficiency of assets devoted to plan, including

25

failure to use Social Security payments to meet necessary expenses, thereby freeing up other income for plan payments, can be considered in good faith analysis).

As with the expense deductions discussed above, the fact that a debtor excludes income from the disposable income calculation that Congress specifically allows the debtor to exclude is not, by itself, probative of a lack of good faith. We reject the reasoning of the cases that say that, because Social Security payments are intended to provide for a recipient's basic needs, a debtor must use the benefit payments to provide for those basic needs, thereby freeing up other, non-exempt income, for plan payments. E.g., In re Hall, 442 B.R. 754 (Bankr. D. Idaho 2010). This approach simply does by indirection what the Code says cannot be done, which is to include Social Security benefit payments in a debtor's disposable income calculation.

We do not preclude consideration of other circumstances indicative of a lack of good faith in a case in which a debtor claims expenses for payments on debt secured by unnecessary property and excludes income that the Code expressly excludes. For example, a court may consider whether a secured debt was incurred shortly before bankruptcy in an attempt to exclude the income used for those payments from payments under the plan. A court may consider whether a debtor who excludes income as allowed by the Code allocates expenses in such a way as to allow the build-up of a substantial surplus with the excluded income over the life of the plan. See, e.g., Herrmann, 2011 WL 576753. These additional facts, taken into account under the totality of the circumstances, may show an unfair manipulation of the

26

Bankruptcy Code or egregious behavior, which are relevant to whether the plan was proposed in good faith.

In this case, however, the trustee does not argue that there are other circumstances that would support a finding of lack of good faith. He does not argue that debtors incurred the secured debt in anticipation of bankruptcy or to shield the payments on that debt from unsecured creditors. Nor does he argue that debtors are building up a substantial surplus as a result of excluding the Social Security income. In fact, debtors propose to devote the Social Security income to payments under the plan, and according to their Schedules I and J, this will leave them with a monthly surplus of approximately $200. The trustee does not claim that this modest surplus indicates a lack of good faith.

The trustee seeks a holding that would allow the bankruptcy court in this case to find a lack of good faith based solely on debtors' calculation of disposable income that deducts expenses the Code allows and excludes income the Code excludes. As we have explained, those are factors that will not alone support denial of confirmation under the good faith standard of § 1325(a)(3).

The bankruptcy court in this case expressly said that it considered the totality of circumstances in determining that debtors had proposed their plan in good faith. In re Welsh, 440 B.R. at 847. It noted that the current secured debt payments are deductions allowed in determining disposable income, and that the Social Security income is income that the Code excludes from the disposable income calculation. Although the court discussed the

27

necessity of the six vehicles debtors retained, along with the related secured debt expenses that they deducted, it properly did not find a lack of good faith based on those facts alone. It also expressly declined to consider the fact that debtors receive Social Security payments, a portion of which they are not proposing to devote to plan payments.

Ultimately, the question of whether a plan is proposed in good faith is a factual one. Leavitt, 171 F.3d at 1222-23. A court must, however, apply the correct legal standard in reaching that factual determination. In this case, the bankruptcy court applied the correct legal standard in refusing to deny confirmation based solely on debtors' exclusion of Social Security payments and deduction of current payments secured by arguably unnecessary collateral. Accordingly, we affirm the court's order confirming debtors' chapter 13 plan.

CONCLUSION

The bankruptcy court applied the correct legal standard in making its finding that debtors' plan was proposed in good faith. The bankruptcy court did not err in concluding that debtors who devoted the requisite disposable income, as defined by the Code, to paying unsecured creditors met the requirement that their plan be proposed in good faith, even though they could have paid more to their unsecured creditors if they had stopped paying certain secured creditors amounts that are statutorily permitted. Therefore, we AFFIRM.

PAPPAS, Bankruptcy Judge, Dissenting:

I dissent because, in my opinion, the bankruptcy court

abused its discretion when it confirmed Debtors' chapter 13 plan because it applied incorrect legal rules in determining that the plan had been proposed in good faith as required by § 1325(a)(3).[10]

The bankruptcy court concluded in this case that, in performing a good faith analysis, it was precluded from considering that David Welsh receives $1,165 per month in Social Security retirement benefits.[11] The bankruptcy court also decided that, because Debtors were current on their monthly payments to secured creditors, as a matter of law, it would not consider whether it was reasonable for these above-median income Debtors to continue to pay the full amount of all of their secured debts through their chapter 13 plan, even though some of those debts were secured by items that were patently unnecessary to the success of Debtors' financial reorganization.[12] In these

---

[10] In addition to reviewing Trustee's challenges to the bankruptcy court's good faith analysis under § 1325(a)(3), the majority assumes that Trustee is also appealing the bankruptcy court's decision regarding the amount of Debtors' "disposable income" under § 1325(b)(2). While Trustee's argument is perhaps somewhat equivocal, I understand his appellate brief to indicate that this is not an issue. Moreover, in its decision, the bankruptcy court noted that Trustee "withdrew the disposable income objection" prior to entry of its decision. In re Welsh, 440 B.R. 836, 841 n.9 (Bankr. D. Mont. 2010). I therefore also decline to join this part of the majority's opinion because, I fear, it is dicta.

[11] In re Welsh, 440 B.R. at 850 (holding that to consider Social Security income in a good faith analysis would "[run] afoul of 42 U.S.C. § 407(a)," and would be "duplicative" of § 1325(b)'s "ability to pay" test.)

[12] In re Welsh, 440 B.R. at 848 (holding that considering
(continued...)

29

two respects, I think the bankruptcy court erred.  Contrary to the majority, I believe we should vacate the order confirming the plan and remand this case to the bankruptcy court to conduct a proper § 1325(a)(3) good faith analysis.

I.

As the majority notes, it is Debtors' burden to show that all of the § 1325 plan confirmation requirements have been satisfied.  Meyer v. Hill (In re Hill), 268 B.R. 548, 552 (9th Cir. BAP 2001).  One such requirement is § 1325(a)(3), which requires that Debtors prove that "the plan has been proposed in good faith."  Good faith is not defined in the Code.  However, it is the long-standing law in the Ninth Circuit that, when there is a contest about a chapter 13 debtors' good faith, the bankruptcy court must focus upon whether the debtor's plan treats their creditors "equitably."  Goeb v. Heid (In re Goeb), 675 F.2d 1386, 1390 (9th Cir. 1982).[13]  In applying this test, a bankruptcy

---

[12] (...continued)
plan payments on current secured debts in a good faith analysis ignores that such payments are authorized under the § 707(b)(2) means test).  The bankruptcy court reaffirmed this aspect of its ruling in a subsequent decision, In re McHenry, 2011 WL 4625385 at *5-6 (Bankr. D. Mont. Sept. 30, 2011).

[13]  Subsequent decisions from the Ninth Circuit, like Leavitt v. Soto (In re Leavitt), 171 F.3d 1219, 1224 (9th Cir. 1999) and Eisen v. Curry (In re Eisen), 14 F.3d 469 (9th Cir. 1994), have embellished upon the Goeb test.  However, to be precise, those cases analyzed a debtor's conduct in filing the chapter 13 case in the first place, as opposed to whether the debtor had proposed a plan in good faith.  In apparent recognition that these are distinct confirmation standards, Congress added § 1325(a)(7) to the Code in 2005, which now requires that a debtor also prove that the "filing [of] the petition was in good faith."  Other decisions, both pre- and
(continued...)

30

court "may consider the substantiality of the proposed repayment [to creditors and] must make its good-faith determination in the light of all militating factors." Id. To do justice in this inquiry, the "bankruptcy courts should determine a debtor's good faith on a case-by-case basis, taking into account the particular features of each chapter 13 plan." Id.

The bankruptcy court in this case decided that Debtors' plan was proposed in good faith, a ruling blessed by the majority. However, in coming to its conclusion, the bankruptcy court did not engage in the sort of unfettered "totality of the circumstances" review mandated by In re Goeb. Instead, the bankruptcy court applied a "not-quite totality of the circumstances" test, and decided it should not consider two highly relevant factors about Debtors' plan. That was error.

II.

First, the bankruptcy court noted that under 42 U.S.C. § 407(a), Social Security benefits are not "subject to" any bankruptcy law. In re Welsh, 440 B.R. at 843–44. It also observed that, under § 101(10A), benefits received under the

---

[13](...continued)
post-BAPCPA have focused more narrowly on the provisions of the debtor's proposed plan in determining a debtor's good faith. See, e.g., Spokane Ry. Credit Union v. Gonzales (In re Gonzales), 172 B.R. 320, 325 (E.D. Wash. 1994); Fidelity & Cas. Co. of N.Y. v. Warren (In re Warren), 89 B.R. 87, 90–93 (9th Cir. BAP 1988); In re Frazier, 448 B.R. 803, 812–13 (Bankr. E.D. Cal. 2011). Leavitt is instructive in providing one generic tenet for application in any chapter 13 good faith review: to find a lack of good faith, a bankruptcy court need not decide that the debtor is acting with fraudulent intent, ill will directed to the creditors, or that the debtor is affirmatively attempting to violate the law. 171 F.3d at 1224-25.

31

Social Security Act are excluded from calculating a debtor's "current monthly income" for purposes of determining eligibility for chapter 7 relief under the § 707(b) "means test," a test incorporated in chapter 13 to fix the amount of a debtor's "disposable income" under § 1325(b)(2). Id. at 844-46. The bankruptcy court reasoned that it would violate these statutory provisions were it to consider Debtors' Social Security income in deciding whether they have proposed their plan in good faith. Id. at 849-50. This conclusion is surely incorrect for several reasons.

Despite these statutes, the fact that a debtor receives Social Security income is considered all the time, for many different purposes, in chapter 13 cases. For example, a debtor's monthly Social Security payments can provide the basis for a bankruptcy court to find that a debtor has "regular income" to be eligible for chapter 13 relief in the first place.[14] Moreover, in considering confirmation of a plan, since a debtor's monthly Social Security benefits are available to pay living expenses and plan payments, they are also properly taken into account to decide whether, under § 1325(a)(6), "the debtor will be able to make all payments under the [proposed] plan."[15] In the context of a chapter 13 case, there is no realistic reason to consider a

---

[14] See, e.g., Hagel v. Drummond (In re Hagel), 184 B.R. 793, 797 (9th Cir. BAP 1995); In re Bassett, 413 B.R. 778, 786-87 (Bankr. D. Mont. 2009); In re Spurlin, 350 B.R. 716, 721-22 (Bankr. W.D. La. 2006); In re Rigales, 290 B.R. 401, 403 (Bankr. D.N.M. 2003).

[15] See In re Upton, 363 B.R. 528, 535 n.6 (Bankr. S.D. Ohio 2007).

32

debtor's Social Security income for some purposes, but to ignore that same income in determining a debtor's good faith.

That 42 U.S.C. § 407(a) may place Social Security benefits out of the reach of, for example, a hungry chapter 7 bankruptcy trustee trying to assemble funds to distribute to creditors is no justification to disregard the existence of such income in judging a debtor's good faith in proposing a particular plan under chapter 13. In a chapter 13 case, a debtor's Social Security benefits are not being garnished, seized, or "subjected to" the reach of creditors. Plainly, consideration of Social Security income does not violate either the letter or spirit of 42 U.S.C. § 407(a). Not surprisingly, then, and contrary to the majority's conclusion, bankruptcy courts across the country have recognized it is appropriate to consider the existence and amount of a debtor's Social Security income in performing a chapter 13 good faith analysis.[16]

It is also not significant in judging a debtor's good faith in a chapter 13 case that Social Security income is excluded by § 101(10A) from the means test calculations in a chapter 7 case, or from the process of determining an above-median income debtor's plan payment under § 1325(b)(2).[17] While a debtor's

---

[16] See, e.g., In re Herrmann, 2011 WL 576753 at *7-8, 11 (Bankr. D.S.C. Feb. 9, 2011); In re Mains, 451 B.R. 428, 434, 436-37 (Bankr. N.D. Mich. 2011); In re Thomas, 443 B.R. 213, 217-19 (Bankr. N.D. Ga. 2010); In re Upton, 363 B.R. at 535-37.

[17] See, e.g., In re Devilliers, 358 B.R. 849, 867 (Bankr. E.D. La. 2007) ("[S]trict and technical compliance with the means test does not necessarily satisfy any debtors' burden of good faith. Determining whether a plan is proposed in good faith
(continued...)

33

projected disposable income as calculated under § 1325(b)(2) sets a <u>floor</u> for chapter 13 plan payments, these calculations do not constitute a safe harbor, nor dictate whether a debtor could comfortably be paying more to creditors in a particular case.[18]

Like the many other bankruptcy courts that have done so, this Panel should hold that Social Security income is a relevant factor for the bankruptcy court to consider in evaluating a debtor's good faith under a § 1325(a)(3). If Congress wanted bankruptcy courts to exclude consideration of Social Security benefits under § 1325(a)(3), it could have easily done so expressly, as it did in § 101(10A). It did not, and we should not strain to imply that restriction in reading other, inapplicable statutes. In this case, when the bankruptcy court held that it was constrained from considering Debtor's Social Security payments, it erred.

                                III.

The bankruptcy court also held that, since these above median-income Debtors were current on their monthly payments to

---

[17](...continued)
requires an analysis of the totality of the circumstances.").

[18]    Under § 101(10A), Social Security benefits are excluded when determining under the § 707(b)(2)(A) means test whether a statutory "presumption of abuse" arises in the case of a debtor seeking relief under chapter 7. Interestingly, however, Social Security income would apparently be relevant in determining whether, in a case in which no statutory presumption arises, granting the debtor chapter 7 relief would otherwise be an "abuse" under § 707(b)(3). <u>See</u> <u>In re Calhoun</u>, 396 B.R. 270, 274 (Bankr. D.S.C. 2008). To make that decision, the statute requires the bankruptcy court to consider whether "the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(B).

34

their many secured creditors, it could not consider whether it was good faith for Debtors to propose a plan that allowed them to continue to pay all of these secured debts in full, regardless of whether it was reasonable under the circumstances for them to do so.  In re Welsh, 440 B.R. at 847-49.  I disagree with that conclusion.  Again, that current payments to secured creditors are deducted in a § 707(b)(2)/§ 1325(b) means test analysis is not reason enough for the bankruptcy court to decline to exercise its conscience in deciding whether, in proposing large plan payments on unnecessary secured debts, the plan treats Debtors' other creditors equitably.

Here, Debtors should reasonably be expected to propose a chapter 13 plan that retains, and pays the debts secured by, their home[19] and necessary vehicles.  But there is nothing in the record to demonstrate that Debtors needed, or that they should pay the debts for, a car their nonresident, physician-daughter drives, two four-wheeler ATVs,[20] or an Airstream travel trailer.

---

[19]    Debtors have significant equity in their spacious home. Under different facts, however, a bankruptcy court should also have a say under § 1325(a)(3) regarding whether a debtor should be able to retain, and pay for, an expensive house that is completely unreasonable for his or her needs.  While this would admittedly involve a subjective analysis by the bankruptcy court, in my view that's exactly the approach § 1325(a)(3) and the case law mandates, something which BAPCPA could have changed, but clearly did not.  While BAPCPA may have constrained the discretion of the bankruptcy courts in some respects, it is doubtful Congress intended BAPCPA as a vehicle for chapter 13 debtors to retain luxury houses subject to large mortgages at the expense of their unsecured creditors.

[20]    The bankruptcy court found that one ATV was needed by Debtors to plow snow on their mile-long driveway in the winter.
(continued...)

35

The bankruptcy court erred in approving a plan as "good faith" that allows these high-income Debtors[21] to pay secured creditors to retain unnecessary items.  In reaching this conclusion, I join a host of other courts that have decided that, in reviewing the totality of the circumstances, § 1325(a)(3) requires a bankruptcy court to examine the nature and amount of secured debt being paid through a debtor's proposed plan.[22]

As noted above, the chapter 7 means test calculations incorporated in § 1325(b), and the good faith analysis required by § 1325(a)(3), are distinct plan confirmation requirements. While under § 1325(b), if the trustee objects, above-median income chapter 13 debtors must pay at least their "projected disposable income" to creditors through a plan, Congress did not decide that a plan proposing to pay only that amount might not otherwise fail the good faith test.  While a debtor with a large house, several cars, and other "luxury" secured debt, might successfully navigate the means test, § 1325(a)(3) still requires that the debtor treat the other creditors equitably in the

---

[20](...continued)
The only other use cited in the record for the ATVs was for their recreation.

[21]    Debtors' total monthly income exceeds $9,200.

[22]    See, e.g., In re Kramp, 2011 WL 4002614 at *1-2 (Bankr. N.D. W. Va. Sept. 6, 2011); In re Hicks, 2011 WL 2414419 at *4-7 (Bankr. N.D. Ala. Jun. 15, 2011); In re Daniel-Sanders, 420 B.R. 102, 106-07 (Bankr. W.D.N.Y. 2009); In re Spruch, 410 B.R. 839, 843-44 (Bankr. S.D. Ind. 2008); In re Martin, 373 B.R. 731, 734-36 (Bankr. D. Utah 2007; In re Hylton, 374 B.R. 579, 586 (Bankr. W.D. Va. 2007).

plan.[23] In this case, Debtors' plan pays for recreational vehicles and a car they do not use at the expense of their unsecured creditors. On this record, that's not fair.[24]

There is also no evidence in the record, nor mention in the bankruptcy court's decision to explain why, even if these unnecessary assets were to be retained, Debtors' plan did not propose to "cram down" the secured debts owed on the over-encumbered items, as allowed under § 1325(a)(5)(B).[25] In this

---

[23] See In re Williams, 394 B.R. 550, 572 (Bankr. D. Colo. 2008) ("[Section] 1325(a)(3) allows for a more subjective analysis of a debtor's good faith and the totality of the circumstances, even where the debtor has met the mechanical requirements of § 1325(b).").

[24] The Utah bankruptcy court aptly described the function of the § 1325(a)(3) good faith requirement as a "smell test" and noted that "[i]t seems fundamentally inappropriate that a debtor might file for bankruptcy relief and obtain a discharge of debt while still enjoying a luxury item such as a recreational ski boat and trailer" and paying unsecured creditors a minimal amount. In re Martin, 373 B.R. at 736.

[25] The majority would prefer to decline to consider in this appeal that the amount being paid by Debtors under their plan to secured creditors grossly exceeds the value of the collateral securing those claims. The majority argues that Trustee never raised this offensive feature of the plan in his good faith challenge in the bankruptcy court. To me, this approach to review of the bankruptcy court's decision is flawed for at least two reasons. First, Debtors' treatment of their secured debts was indeed a key feature of Trustee's objection to confirmation of their plan. Of course, Trustee argued the claims secured by Debtors' unnecessary assets should not be paid at all through Debtors' plan. Given that objection, if those creditors are to be paid, how much they should fairly receive should certainly be fair game for the bankruptcy court, and for this Panel on appeal, when considering Debtors' good faith. Second, the bankruptcy court had an independent duty to decide whether Debtors' plan satisfied the Code's confirmation requirements, including § 1325(a)(3), even in the absence of an objection by
(continued...)

37

regard, the bankruptcy court and this Panel should instead ask how it is good faith for Debtors to use chapter 13 to pay $38,000 for an Airstream trailer worth $23,000, $7,500 for two ATVs worth $5,400, and $19,000 for a pickup valued at $10,000?[26]

                                    IV.

While it may be an amorphous, somewhat subjective standard, at bottom, § 1325(a)(3) is designed to prevent confirmation of inequitable plans. A bankruptcy court simply cannot decide if a plan is proposed in good faith if it declines to consider either

---

[25](...continued)
the trustee. United Student Aid Funds, Inc. v. Espinosa, 130 S. Ct. 1367, 1381 & n. 15 (2010), citing In re Mammel, 221 B.R. 238, 239 (Bankr. N.D. Iowa 1998) ("[W]hether or not an objection is presently lodged in this case, the Court retains the authority to review this plan and deny confirmation if it fails to comply with the confirmation standards of the Code."). I question how that duty can be discharged if the bankruptcy court, or this Panel, declines to consider Debtors' intent to pay secured creditors far more than § 1325(a)(5)(B) would require in connection with the equitable analysis mandated by § 1325(a)(3).

[26]    In a later decision, the bankruptcy court described Debtors' proposed payments under their plan to the unsecured creditors in this case as "minuscule." In re McHenry, 2011 WL 4625385 at *4 ("This Court, in Welsh, confirmed a plan that permitted the debtors to make payments on secured claims, including a $400,000 home, while making only minuscule payments to general unsecured creditors."). I agree with this description. Debtors' plan proposes to pay secured debts, excluding those for the house and one car, totaling about $65,000, while committing to pay their unsecured creditors, that hold claims totaling $180,000, $14,700 over the sixty-month term of their plan. Debtors' schedules I and J reflect they have net income available each month, after payment of living expenses and secured debts, of $395, which if paid to unsecured creditors, would amount to $23,700 over the term of their plan. If Debtors's plan omitted payments on their Airstream, one ATV, and the car used by their daughter, another $700+ per month, or $42,000, would be available for unsecured creditors.

38

that a debtor receives Social Security income, or the nature, amount and reasonableness of the debtor's proposed payments to secured creditors through a plan. Because the bankruptcy court refused to consider such highly relevant facts as part of the totality of the circumstances in Debtors' case, it applied an incorrect legal analysis in examining Debtors' good faith, and abused its discretion in confirming Debtors' plan. The principles of fairness embodied in § 1325(a)(3) require that we vacate the order confirming the plan and remand to the bankruptcy court to perform a proper good faith analysis of Debtors' plan.[27]

---

[27] "[The] bankruptcy court[] cannot substitute a glance [at some good faith factors, but not others,] for a review of the totality of the circumstances . . . . [If] the [bankruptcy] court below did not inquire adequately into whether the [debtor] acted in good faith, we must reverse and remand . . . ." In re Goeb, 675 F.2d at 1391.